UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

VICTOR P. KEARNEY,                                           Case No. 17-12274 t11

        Debtor.

## **OPINION ON COUNSEL'S REQUEST FOR *NUNC PRO TUNC* RELIEF**

Before the Court is the request of Debtor's bankruptcy counsel to approve its employment, *nunc pro tunc*,[1] for the eight days between the date it started working on the case and the date it filed an employment application. A creditor objected. Having reviewed the facts and case law on *nunc pro tunc*, the Court concludes that the request must be denied.

### I.     FACTS.

For the sole purpose of ruling on the *nunc pro tunc* request, the Court FINDS:

    1.     Debtor filed this chapter 11 case on September 1, 2017.

    2.     On September 12, 2017, Debtor filed an application to employ Jason Cline, LLC as counsel.

    3.     On October 11, 2017, the law firm of Gardere Wynne Sewell LLP ("Gardere") was engaged by Timothy Hassenger, a principal of RSG Restructuring Advisors, LLC ("RSG"). At the time, the parties apparently intended for Gardere to represent RSG, who was to be retained by Debtor as the "Chief Restructuring Officer."

    4.     On October 13, 2017, the Court held a status conference in the case. Marcus Helt of Gardere appeared by telephone at the status conference. Mr. Helt told the Court that Gardere was to be employed as counsel for RSG.

---

[1] Latin, meaning "now for then."

5. On October 18, 2017, Gardere filed two motions to appear *pro hac vice*. The first one, doc. 48, stated that Gardere was "requesting permission to represent Timothy Hassenger, proposed CRO to the estate of Victor P. Kearney . . ." Gardere withdrew this motion about an hour and a half after it was filed, replacing it with a motion, doc. 51, stating that Gardere was "requesting permission to represent the Estate of Victor P. Kearney . . ."

6. Also on October 18, 2017, Debtor (acting through Gardere, its "proposed counsel") filed an application to retain RSG, doc. 49.

7. On October 19, 2017, Debtor filed his application to employ Gardere, doc. 53. The application states in part:

> For the avoidance of doubt, Gardere will represent the Debtor and take direction from Mr. Hassenger in the Chapter 11 Case. . . . Gardere will act at the direction of Mr. Hassenger, the Debtor's proposed CRO.

8. The application also states:

> The Debtor specifically requests that this Court approve Gardere's employment *nunc pro tunc* as of October 11, 2017, the date of Gardere's engagement with Mr. Hassenger.

9. Creditors Louis Abruzzo and Benjamin Abruzzo, as trustees of the Mary Pat Abruzzo Kearney Testamentary Trusts B and C (the "Trustees"), objected, arguing that Gardere should not represent the Debtor while taking direction from a third party. The Trustees also objected to the requested *nunc pro tunc* relief.

10. Debtor's application to retain RSG was subsequently withdrawn, and Gardere agreed to take direction from Debtor. In light of these developments, the Trustees withdrew their opposition to Gardere's employment, albeit maintaining their objection to the *nunc pro tunc* request.

-2-
Case 17-12274-t11    Doc 155    Filed 02/15/18    Entered 02/15/18 10:18:25 Page 2 of 11

11. On December 4, 2017, the Court approved Debtor's employment of Gardere, effective as of October 19, 2017. The Court took Gardere's *nunc pro tunc* request under advisement.

## II. DISCUSSION

A. <u>Employment of Professionals under § 327</u>.

Section 327(a)[2] authorizes bankruptcy trustees, with court approval, to employ one or more professional persons to represent or perform services for a bankruptcy estate. The section provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

§ 327(a) also applies to debtors in possession. § 1107(a) provides in part:

> [A] debtor in possession shall have all of the rights . . . and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter.

B. <u>"Relating Back" Court Approval to the Application Date</u>.

Courts have generally read § 327(a) to mean that professional persons may not be paid from the estate for work unless their employment is approved. *See* 3 Collier on Bankruptcy ¶ 327.03[2][c] ("A professional failing to comply with the requirements of the Code or Bankruptcy Rules relating to employment may forfeit the right to compensation . . . . The services for which compensation is requested should be performed pursuant to appropriate authority under the Code and in accordance with an order of the court. Otherwise, the person rendering such services may be considered an officious intermeddler or a gratuitous volunteer."). *See also In re Albrecht*, 245 B.R. 666, 671-72 (10th Cir. B.A.P. 2000) (quoting Collier); *Interwest Bus. Equip., Inc. v. United*

---

[2] Unless stated otherwise, all statutory references are to the United States Bankruptcy Code, 11 U.S.C.

*States Trustee (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 318 (10th Cir. 1994) ("[A]ny professional not obtaining approval is simply considered a volunteer if it seeks payment from the estate.").

Orders approving employment are rarely entered on the date employment applications are filed. Rather, in most jurisdictions, applications are noticed to creditors and the United States Trustee's office,[3] and are not approved until the objection deadline expires. If objections are timely filed, orders may not be entered until considerably later (if at all).

To deal with this gap period, courts typically rule that employment orders "relate back" to the application date. *See, e.g., In re Potter*, 377 B.R. 305, 308 (Bankr. D.N.M. 2007) ("It is not inappropriate to approve the employment effective as of the date of the filing of the Application to Employ."). The *Potter* court cited *In re Bartmann*, 320 B.R. 725, 735 n.8 (Bankr. N.D. Okla. 2004), for the general rule that "approval of employment of professionals is granted as of the date the application was filed . . . ." *See also In re Vaughan,* 2010 WL 1740618, at *1, n. 4 (Bankr. D.N.M.) ("The standard rule, long established in the case law, is that postpetition employment by the estate can be retroactively permitted, but only as far back as the date of the filing of the employment application"); *In re Melton*, 353 B.R. 901, 903 (Bankr. D. Idaho 2006) (relation back to the application date provided for in a local bankruptcy rule).

This jurisdiction has neither a local rule nor a standing order providing that employment orders "relate back" to the application date. However, the Court concludes that "relation back" orders are well within the Court's § 105(a) power to issue orders "necessary or appropriate to carry out the provisions of this title." Such orders are necessary to ensure that debtors can compensate

---

[3] Under Fed. R. Bankr. P. 2014(a), employment applications must be served on the United States Trustee's Office.

counsel for essential work (critical when the case is first filed), and also to afford parties in interest a chance to review and object to employment applications.

C. *Nunc Pro Tunc* Orders

*Nunc pro tunc* orders, i.e., orders that "relate back" to a date *before* the application is filed, are a different kettle of fish.

1. No Per Se Rule Against *Nunc Pro Tunc* Relief. Although § 327(a) requires "prior approval" of a professional person's employment, courts have held that they may, in the proper circumstances, approve employment *nunc pro tunc* if necessary to prevent unfair or inequitable consequences. *See, e.g., In re Triangle Chemicals, Inc.,* 697 F.2d 1280, 1284 (5th Cir. 1983) (no per se rule against *nunc pro tunc* approval of employment); *In re Arkansas Co., Inc.*, 798 F.2d 645, 647 (3d Cir. 1986) (same); *In re Jarvis*, 53 F.3d 416, 419-20 (1st Cir. 1995) (same); *In re Singson,* 41 F.3d 316, 319-20 (7th Cir. 1994) (same). *See also In re First Sec. Mortg. Co.*, 117 B.R. 1001, 1007 (Bankr. N.D. Okla. 1990) (criticizing a strict rule against *nunc pro tunc* approval as engendering unjust enrichment of the estate based on technical, innocent, and/or harmless lapses).

2. The Extraordinary Circumstances Standard. Courts have adopted several standards for determining whether *nunc pro tunc* relief is appropriate. One standard allows *nunc pro tunc* relief only upon a showing of "extraordinary circumstances." *In re Keren Ltd Partnership,* 189 F.3d 86, 87-88 (2d Cir. 1999); *In re Jarvis,* 53 F.3d 416, 420-21 (1st Cir. 1995); *Arkansas*, 798 F.2d at 651; *In re Motors Liquidation Co.,* 438 B.R. 365, 376 (Bankr. S.D.N.Y. 2010); *In re Camp Lightweight, Inc.,* 76 B.R. 855, 857 (Bankr. M.D. Ca. 1987) (citing and following *Arkansas*); *In re Berman,* 167 B.R. 323, 324 (Bankr. D. Mass. 1994); *In re Luchka*, 152 B.R. 18, 19 (Bankr. D.R.I. 1993); *In re Pica Systems, Inc.,* 124 B.R. 30, 34 (E.D. Mich. 1991); *In re Banhalmi,* 84 B.R. 123, 127 (Bankr. N.D. Ill. 1988). This high standard is designed to deter professionals from a

general disobservance of § 327. 3 Collier on Bankruptcy, ¶ 327.03 (16th ed.). *See also Arkansas*, 798 F.2d at 651 ("the prophylactic statutory rule that approval must be sought in advance of performance of services is too strong to be overcome by a mere showing of oversight"); *In re Schupbach Investments, LLC,* 521 B.R. 449, at *7 (10th Cir. BAP 2014) (unpublished), *affirmed*, 808 F.3d 1215 (10th Cir. 2015) (quoting *Arkansas*); *Berman,* 167 B.R. at 324 ("To grant relief in any other than the most extraordinary circumstances would render [§ 327(a) and Fed. R. Bankr. P. 2014(a)] meaningless"). The "extraordinary circumstances" standard is described by one treatise as the "prevailing approach" to *nunc pro tunc* requests by estate professionals. 3 Collier on Bankruptcy ¶ 327.03[3]. Courts following this standard hold that excusable neglect is not enough to justify an order granting *nunc pro tunc* relief.

       3.       <u>The Excusable Neglect Standard</u>. A competing approach is the "excusable neglect" standard, under which *nunc pro tunc* relief may be granted upon a showing of simple neglect or inadvertence. *See, e.g.*, *In re Singson*, 41 F.3d 316, 320 (7th Cir. 1994) (lower court did not abuse its discretion in applying "excusable neglect" standard); *In re Brown*, 555 B.R. 854, 858 (Bankr. S.D. Ga. 2016) (applicant's neglect in filing employment application was excusable, because delay resulted from disagreement over compensation, which was not solely applicant's fault); *In re Sayegh*, 62 B.R. 601, 603-04 (Bankr. S.D. Tex. 1986); *In re Vlachos*, 61 B.R. 473, 479 (Bankr. S.D. Ohio 1986).

       4.       <u>The *Twinton Properties* Standard</u>. A third standard was outlined in *In re Twinton Properties Partnership,* 27 B.R. 817 (Bankr. M.D. Tenn. 1983):

> [T]he Bankruptcy Code neither expressly requires pre-employment approval nor prohibits *nunc pro tunc* appointments. This court is thus constrained to apply the rule that the issuance of *nunc pro tunc* orders of employment is vested in the sound discretion of the bankruptcy court. *Nunc pro tunc* applications must be the extraordinary exception rather than an accepted practice. The court will carefully scrutinize all *nunc pro tunc* requests under strictly interpreted criteria. Specifically,

an applicant for *nunc pro tunc* employment of a professional person must affirmatively demonstrate each of the following by clear and convincing evidence:

    1. The debtor, trustee or committee expressly contracted with the professional person to perform the services which were thereafter rendered;

    2. The party for whom the work was performed approves the entry of the *nunc pro tunc* order;

    3. The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;

    4. No creditor or party in interest offers reasonable objection to the entry of the *nunc pro tunc* order;

    5. The professional satisfied all the criteria for employment pursuant to 11 U.S.C.A. § 327 and Rule 215 of the Federal Rules of Bankruptcy Procedure at or before the time services were actually commenced and remained qualified during the period for which services were provided;

    6. The work was performed properly, efficiently, and to a high standard of quality;

    7. No actual or potential prejudice will inure to the estate or other parties in interest;

    8. The applicant's failure to seek pre-employment approval is satisfactorily explained; and

    9. The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

27 B.R. at 819-20. The nine-part *Twinton Properties* standard is frequently cited. *See, e.g., In re Aultman Enterprises*, 264 B.R. 485, 492 (E.D. Tenn. 2001); *In re Clinton County Hospital, Inc.,* 2015 WL 5178045, at *1 (Bankr. W.K. Ky 2015); *In re Martin*, 102 B.R. 653, 655 (Bankr. W.D. Tenn. 1989); *In re McDaniels*, 86 B.R. 128, 133-34 (Bankr. S.D. Ohio 1988). The standard is not without its critics, however. *See, e.g., In re Greektown Holdings, L.L.C.,* 2010 WL 7343848, at *2 (Bankr. E.D. Mich.), citing *In re Crook,* 62 B.R. 937, 941 (Bankr. D. Or. 1988), *reversed on other grounds*, 79 B.R. 475 (9th Cir. BAP 1987).

    5.    <u>Tenth Circuit Law on *Nunc Pro Tunc*</u>.

The Tenth Circuit falls squarely within the "extraordinary circumstances" camp. *See In re Land,* 943 F.2d 1265, 1267-68 (10th Cir. 1991) ("nunc pro tunc approval is only appropriate in the most extraordinary circumstances"); *In re Schupbach Investments, L.L.C.*, 808 F.3d 1215, 1220 (10th Cir. 2015) (reiterating the "extraordinary circumstances" test, and citing *Land*); *In re*

*Novinda Corp.*, 2017 WL 1284715, at *2 (Bankr. D. Co.). *See also In re Eurogas, Inc.,* 560 B.R. 574, 586 (Bankr. D. Utah 2016) (observing, in a context other than professional employment, that *nunc pro tunc* relief is limted to "extraordinary circumstances").

D.      <u>The Test for Determining Whether Extraordinary Circumstances Exist</u>.

The Tenth Circuit has not adopted a test to determine when circumstances are sufficiently extraordinary to warrant *nunc pro tunc* relief. There is guidance from lower courts and other circuits, however. In *Arkansas*, the Third Circuit adopted the "extraordinary circumstances" test and stated:

> When considering an application, the bankruptcy court may grant retroactive approval only if it finds, after a hearing, that it would have granted prior approval . . . . Thereafter, in exercising its discretion, the bankruptcy court must consider whether the particular circumstances in the case adequately excuse the failure to have sought prior approval. This will require consideration of factors such as whether the applicant or some other person bore repsonsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

798 F.2d at 650. The First Circuit Court of Appeals cited the *Arkansas* test. *Jarvis*, 53 F.3d at 420-21. Closer to home, Judge Brown used the *Arkansas* test in a recent opinion. *In re Novinda Corp.*, 2017 WL 1284715, at *2 (Bankr. D. Co.).

Under *Arkansas*, a *nunc pro tunc* applicant must first show that, had it timely filed its employment application, the application would have been granted. If that requirement is met, then the court should consider, inter alia, the following factors when deciding whether circumstances are extraordinary enough to warrant *nunc pro tunc* relief:

       1.     Was the professional responsible for filing the application?
       2.     Was the professional under time pressure to begin service without approval?
       3.     How much delay was there after the professional learned that the application had not been filed?

> 4. Would granting *nunc pro tunc* relief prejudice third parties?

Rather than the *Arkansas* test, Gardere argues that its *nunc pro tunc* request should be evaluated under the *Twinton Properties* conditions. The Court cannot agree. First, as outlined above, the two standards are different. Second, there is no logic to requiring that a professional meet each *Twinton Properties* condition to demonstrate "exceptional circumstances."[4] Third, there is no reason why the standard of proof should be clear and convincing. Finally, it is preferable to use the test adopted by other "exceptional circumstances" courts, rather than an artificial, nine-part "extraordinary exception" standard. While some of the *Twinton Properties* conditions may be relevant when viewed as factors (e.g., the second and ninth conditions), others seems seem less so. The Court therefore will use the test from *Arkansas* and *Novinda,* with the addition of the second and ninth *Twinton Properties* conditions (used as factors).

E. <u>Discussion</u>.

1. <u>Requirement One: Would the Court Have Granted the Employment Application, if Timely Filed</u>? Probably not. The problem in this case is that it was unclear on October 11, 2017, who Gardere's client was going to be. That was not clarified until October 18, 2017, the day before Gardere's employment application was filed.

2. <u>Requirement Two: Are There Extraordinary Circumstances</u>? The Court weighs the four *Arkansas*/*Novinda* factors and the second and ninth *Twinton* factors as follows:

| Factor | Discussion |
| --- | --- |
| 1. Was the professional responsible for filing the application? | Yes. The Court likely would give more *nunc pro tunc* leeway to a professional (particularly one unfamiliar with bankruptcy procedures) |

---

[4] As the Ninth Circuit argued in *In re Atkins,* the *Twinton Properties* requirements "are not a litmus test." *Atkins*, 69 F.2d 970, 975 (9th Cir. 1995), quoting *Crook*, 79 B.R. 475, 478 (9th Cir. BAP 1987). *See also In re Laguna Hills Fin. Assocs.,* 93 B.R. 224, 226 (Bankr. C.D. Cal. 1988) ("[s]atisfaction of the nine so called '*Twinton Properties* conditions' is not a prerequisite to trial court approval" of a *nunc pro tunc* application)*.*

| | who relied on Debtor's counsel to navigate the § 327 employment process. |
|---|---|
| 2. Was the professional under time pressure to begin service without approval? | Some, but nothing out of the ordinary. Gardere is a large firm. With its resources, it could have ensured its employment application was timely filed on October 11, 2017. |
| 3. How much delay was there after the professional learned that the application had not been filed? | This factor does not apply. It does not appear that the delay in filing was related to inadvertence or ignorance about the status of the employment application. |
| 4. Would granting *nunc pro tunc* relief prejudice third parties? | There would be prejudice in paying Gardere before the date it started working for the Debtor rather than RSG. Furthermore, any *nunc pro tunc* payment would reduce the dividend to general unsecured creditors, if the estate turns out to be insolvent. |
| 5. Does the client object to the *nunc pro tunc* request? | The client does not object. |
| 6. Does the professional have a pattern of filing employment applications late? | The Court has no reason to suspect a pattern of late filing. However, the Court's impression from oral argument is that *nunc pro tunc* employment may be fairly common in Texas, where Gardere is based. If so, an eight-day delay may not be unusual. Nevertheless, Gardere should have confirmed that *nunc pro tunc* orders are extraordinary in the Tenth Circuit, not routine. |

Gardere does not meet the standard for granting *nunc pro tunc* relief in the Tenth Circuit. The Court likely would not have granted Gardere's employment application on October 11, 2017, because its client at that time was RSG. Gardere's change in clients was not made until shortly before its employment application was filed. As this requirement for *nunc pro tunc* relief is not met, Gardere's request must be denied. Further, the six factors testing whether the circumstances were extraordinary indicate that they were not. Factors one, two, and four weigh against granting the requested relief; factor five weighs in favor; and factors two and six either do not apply or are neutral.

III.     CONCLUSION

Gardere's request for *nunc pro tunc* approval of its employment must be denied, under the *Arkansas* test of the "extraordinary circumstances" standard.

IT IS SO ORDERED.

 

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: February 15, 2018

Copies to: counsel of record