UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

VICTOR P. KEARNEY,   Case no. 17-12274-t11

   Debtor.

## MEMORANDUM OPINION

This matter came before the Court on Victor Kearney's (the "Debtor") Amended Motion for 2004 Examination of Alvarado Realty Company (the "Rule 2004 Motion"). For the reasons set forth below, the Court will grant the 2004 Motion in part.

I.   BACKGROUND

The Court finds the following facts, for the limited purpose of ruling on the Rule 2004 Motion:[1]

Benjamin and Pat Abruzzo owned and developed the Sandia Peak Ski Area and the Sandia Peak Tramway, both owned by Alvarado Realty Company ("ARCO"). The Abruzzos died in a plane crash in 1985, and were survived by their four children, Louis, Benny, Richard, and Mary Pat. The children took over the management of ARCO after their parent' death.

Mary Pat Abruzzo married the Debtor in 1988, when she was 22 years old. She executed a last will and testament on July 8, 1988.

---

[1] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, *sua sponte*, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade,* 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket"). The Court also made findings from the hearing exhibits admitted into evidence at the final hearing on the Abruzzo trustees' motion for relief from stay, and from the Debtor's bankruptcy schedules and statement of financial affairs.

Mary Pat Abruzzo died in 1997, at the age of 31. At the time of her death, she owned about 18.5% of ARCO's stock. Under the terms of her will, the stock was bequeathed to two testamentary trusts (together, the "Trusts" or the "MPK Trusts").

During his lifetime, Debtor is the income beneficiary of the MPK Trusts. Upon his death, the corpus of the trusts is to be distributed to Louis, Benny, and Richard Abruzzo or their children.[2]

Mary Pat Abruzzo's will appointed the Debtor, Louis, and Benny Abruzzo as co-trustees of the MPK Trusts.

Income from the ARCO stock held by the MPK Trusts is substantial. Between 1998 and 2018, the Trusts paid the Debtor a total of about $16,000,000, or about $800,000 per year.

Despite this substantial annuity, relations between the Debtor and Louis and Benny Abruzzo soured. In 2014, the Debtor sued the Abruzzo brothers in New Mexico state court, cause no. D-202-CV-2013-07676 (the "State Court Action"). In his amended complaint, filed October 9, 2014, the Debtor alleged, inter alia:

- Since 2006 . . .Mr. Kearney has received a cash distribution in the amount of 70% of his distributive share of income from ARCO;
- ARCO has not provided a justifiable reason for withholding payment of the additional 30% of the distributive share of income;
- Since the creation of the Trusts in 1997, the only investments made by the Trusts have been in ARCO stock. No diversification of Trust assets has occurred;
- Defendant have acted in a manner that constitutes self-dealing;
- Defendants have made decisions and undertaken actions that were beneficial to their self-interest and that were in conflict with their fiduciary duties to Mr. Kearney;
- Defendants have taken discretionary actions as fiduciaries which have directly or indirectly benefited the Defendants and their families and that conflict with their fiduciary duties to Mr. Kearney as income beneficiary

The presiding judge assigned to the State Court Action is Hon. Alan Malott.

---

[2] Richard Abruzzo died in a ballooning accident in 2010, leaving Louis Abruzzo, Benny Abruzzo, and Richard Abruzzo's children as the remaindermen.

The Debtor sought discovery from ARCO in the State Court Action. In connection with the discovery, on November 13, 2014, Judge Malott entered a Stipulated Amended Confidentiality and Protective Order (the "Confidentiality Order") covering, *inter alia*, ARCO's trade secrets and private or proprietary information.[3]

Pursuant to the Debtor's discovery requests, and subject to the Confidentiality Order, ARCO produced the following documents to Debtor:

- Alvarado Consolidated Financial Report, 12/31/13;
- Alvarado Realty Co. & Subsidiaries Consolidated Reports, 12/31/13;
- Alvarado Management Co. & Other Book Depreciation Report GAAP, 1/1/13-12/31/13;
- Alvarado Realty Combined Holder Certificate; Bond Stockholder Accounting System, 12/31/13;
- Annual Meeting of Stockholder of Alvarado Realty Co. (04/28/2008-04/30/2013);
- Recent History of Stock Purchases, 10/11/13;
- Alvarado Realty & Subsidiaries: Financial Statements, 12/31/05;
- Alvarado Realty & Subsidiaries: Consolidated Financial Report, 12/31/08;
- Alvarado Realty & Subsidiaries: Projected Cash Flow Summary, 1/1/07-12/31/08;
- US Corporation Income Tax Return 2004-2005; Alvarado Realty Co., Santa Fe Peak Ski Co.;
- US Income Tax Rerun for Alvarado Realty Co., 2006-2007;
- Financial Statements; 10/31/06; Sandia Properties Ltd, Co.;
- Alvarado Realty Co.: Quarterly and Annual Meeting of the Shareholders; Quarterly and Annual Meeting of the Directors; Statements of Assets and Liabilities (1998-2007);
- Stock Purchases;
- Alvarado Consolidated Financial Report, 12/31/14;
- BelAir Corp.: Semi-Annual Meeting of the Shareholders; Annual meeting of the Directors (1998-2007); Plan of Recapitalization- 2005;
- Sandia Peak Ski: Annual Meeting of the Shareholders; Quarterly and Annual Meeting of the Directors (1998-2007) Amendments to Bylaws; Agreement and Plan of Stock Exchange; Plan of Recapitalization- 2005;

---

[3] The Confidentiality Order provides in part that "Confidential Materials shall not be disclosed except as allowed by this Order, as required by law, by further order of this Court, or by another court of competent jurisdiction."

- Affidavits of Director Consents (1998-2007); Statement of Assets and Liabilities (2005); and
- Sandia Peak Tram: Quarterly and Annual Meeting of the Shareholders; Quarterly and Annual Meeting of the Directors; Affidavits of Director Consents (1998-2007); Statements of Assets and Liabilities (2006),

(the "Produced ARCO Documents").

In violation of the Confidentiality Order, the Debtor disclosed confidential ARCO information to a Sierra Constellation Partners, a Mr. Kocon, and Mr. Kevin Yearout. These people, in turn, gave the confidential information to at least 28 other people.

On March 27, 2015, ARCO filed a motion for sanctions in the State Court Action, seeking monetary and other relief for Debtor's violation of the Confidentiality Order. The relief sought included an order that Debtor would not be given any more of ARCO's confidential information. Judge Malott has not ruled on the motion.

Judge Malott presided over a trial on the merits in June and July, 2015. On July 6, 2015, Judge Malott made the following findings of fact in open court:

- There has been no substantial evidence that the Abruzzos in fact control ARCO;
- I don't find that the Abruzzos misused any control they may have had in the circumstances. The totality on which the entire Plaintiff's case rests is if it's good for ARCO, it must be bad for Victor Kearney. That's not the law; that's not the evidence in this case.
- [T]he Abruzzos' efforts on behalf of ARCO . . . have been . . .extremely successful;
- The fact that the Abruzzos have run their company properly does not translate into a starvation or a partiality on behalf of . . . ARCO over and against the interest of either Mr. Kearney or the remainder beneficiaries . . . . The appropriate totality appears to be in this situation, a rising tide lifts all the boats.
- Mr. Kearney has made an increased distribution of over 800 percent through one of the worst recessions this country has ever seen;
- The Abruzzos do not control the board. There is not a single incident in which it was shown they had their way or forced their agenda onto anyone else.
- The fact that ARCO has grown as large over these last 15 years has . . . made the whole pie bigger and everybody's slice bigger. How that could

> translate to a reasonable jury into an award of damages of any particular amount, let along 7-some-odd million dollars, does not compute to the Court.

On September 8, 2015, Judge Malott entered an order memorializing his oral ruling.

On December 22, 2015, Judge Malott entered an order dealing with the payment of the attorney fees incurred by the Abruzzos in the State Court Action. Judge Malott ruled that the Abruzzos were entitled to recover $510,000 in fees, $35,700 in gross receipts tax, and $120,215.69 in costs. Judge Malott ordered the Debtor to pay 75% of these amounts, and the MPK Trusts to pay 25%. The order contains the following finding:

> Plaintiff argues that Defendants should not be allowed to recover fees incurred in Defendants' opposition to his attempts to obtain corporate documents and information from ARCO, the separate, closely held, corporation involved in this matter but not a party hereto. A significant pillar of Plaintiff's case was his claim that his status as a Trustee and Life Income Beneficiary under his deceased wife's Trust entitled him to effect [sic] the management of ARCO from which the Trust's income flows. Another pillar was his claim that Defendants operated ARCO so as to profit ARCO more than the Trust and, therefore, to minimize income to Plaintiff. While Plaintiff was allowed to obtain some, but not all, the corporate information and documentation he sought, he was not successful in establishing his core charges that Defendants managed ARCO to his financial detriment. The fees incurred in context of the ARCO document discovery dispute are a reasonable and necessary part of this overall litigation.
>
> . . . .
>
> While there is no substantial evidence that Plaintiff brought this action without at least an honest belief in the merits of this argument, it is also indisputable that Plaintiff was, after two (2) years of litigation, not able to support his allegations with substantial evidence at trial. While Plaintiff believes he "had legitimate claims against the Defendants" which "survived vigorous summary judgment motions" . . . . Plaintiff could not, and did not, prove those claim at trial.

On April 7, 2017, Judge Malott entered monetary sanctions against the Debtor. In so doing, he found:

- Overall, Debtor has impressed the Court as an individual who bears no allegiance to the truth, but who will say whatever he thinks will achieve his goals. He has little or no credibility.

- Further, Debtor has repeatedly exhibited bad faith non-compliance with his discovery obligations throughout this litigation both generally and by failing to comply with specific discovery orders. In short, Debtor's conduct amounts to an affront to this particular Court and to the entire judicial process.

Judge Malott entered extensive findings of fact and conclusions of Law on July 7, 2017.

Among his findings are:

- A trial on the merits was held on June 29, 30, July 1, 2, and 6, 2015;
- After testifying directly at trial, Mr. Kearney failed to appear for cross-examination and proffered a medical excuse which has never been substantiated in any manner;
- After the close of Mr. Kearney's case, the Court granted Defendants' motion for a judgment as a matter of law on [all claims];
- The court granted the Defendants attorney's fees in the amount of $510,000 plus Gross Receipts Tax;
- The court also awarded $120,215.69 in costs;
- Mr. Kearney admitted that it is a violation of the Trusts' spendthrift clause to promise people payment from the Trusts;
- Mr. Kearney's repeated violations of the Confidentiality Orders and attendant disclosure of both ARCO's discrete financial information as well as information about the Trust assets and operation was a breach of trust;
- The record is replete with Kearney's repeated breaches of his duty as a trustee through self-dealing with third parties, improper disclosures of financial information, and attendant violations of the orders of this court, as well as the clear indication that future litigation will ensure [sic], notwithstanding his resignation as a trustee;
- The court has already found that Mr. Kearney has significant credibility issues. Nothing at trial assuaged those issues;
- Clear and convincing evidence exists that Mr. Kearney is unable to successfully manage his financial life on the trust distributions he receives, and is significantly in debt;
- Mr. Kearney did not participate in a December 2016 mediation in good faith and should pay the full costs of the mediation.

Debtor filed this chapter 11 case on September 1, 2017. He filed his first motion for Rule 2004 examination of ARCO on October 27, 2017, asking for 24 categories of documents. The stated purposes of the request were to obtain information about:

- Debtor's rights to the MPK Trusts;
- Whether the Debtor can enforce the rights;
- The value of Debtor's interests in the trusts;

-6-

- The claims asserted against Debtor by the trusts or trustees;
- Whether the trusts have offset rights;
- Whether a pending stay relief motion filed by the trustees should be granted.
- In addition, Debtor alleged that the requested information would be relevant to the reorganization of his financial affairs and chapter 11 plan.

Without waiting for a ruling on the motion, the Debtor subpoenaed the requested documents from ARCO. ARCO filed a motion for protective order and to quash the subpoena. Later, ARCO objected to the rule 2004 motion.

The matter was pending on February 25, 2018, when Debtor filed an amended motion for Rule 2004 examination of ARCO. The amended motion asked for 40 categories of documents and included 25 additional topics for oral examination. The stated reasons for the requested documents and information are:

- Past due income-from dividends that ARCO improperly withheld-could be the bankruptcy estate's most valuable asset, and recovering those past due payments likely represents the best opportunity for a meaningful recovery to creditors in this case.
- Debtor has certain rights and interests in the trusts, including whether a substitute trustee should be appointed to administer the trusts. Potential successor-trustee candidates need some of the requested information to further analyze whether they would accept the trustee appointment.

Debtor has retained special counsel, Reid Collins & Tsai, LLP, to evaluate and possibly pursue claims against ARCO and its shareholders, directors, and officers.

On May 29, 2018, the Debtor filed an adversary proceeding against the Abruzzos (as trustees) to recover alleged preferential and improper post-petition transfers. The proceeding is pending.

On July 16, 2018, ARCO filed their Objections to Amended Motion for Rule 2004 Examination, doc. 327 (the "Objection"). Attached is an affidavit of John Chavez, an ARCO vice president. Chavez estimated that finding and producing the requested documents would involve about 1,000 man-hours, cost $114,000.00 (apart from attorney fees), and take at least six months.

On September 7, 2018, Debtor filed a summary of terms of a potential $3,300,000 loan from Owl Creek Asset Management, L.P., the proceeds of which would be used to fund a plan of reorganization. One of the funding conditions is "Borrower's professionals receipt of information requested by 2004 Motion."

## II. DISCUSSION

A. <u>Rule 2004</u>.

1. <u>Purpose of Rule 2004 Exam</u>. The primary purpose of an examination under Rule 2004 is to ascertain the extent and location of the estate's assets. *In re Roman Catholic Church of Diocese of Gallup,* 513 B.R. 761, 764 (Bankr. D.N.M. 2014), citing *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992). Causes of action are part of an estate's assets. 11 U.S.C.A. § 541(a)(1) (the estate's property includes "all legal or equitable interests of the debtor in property as of the commencement of the case."). The examiner must establish good cause for taking a Rule 2004 examination. *Diocese of Gallup*, 513 B.R. at 764. *See also In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).

2. <u>Scope of Rule 2004 Exam</u>. The scope of a Rule 2004 examination can be broad. *See In re Handy Andy Home Improvement Centers, Inc.*, 199 B.R. 376, 378 (Bankr. N.D. Ill. 1996) ("The scope of inquiry under Bankruptcy Rule 2004 is very broad. Great latitude of inquiry is ordinarily permitted. Where there is a showing that the purpose of the examination is to enable a party to probe into matters which may lead to the discovery of assets by examining not only the debtor, but also other witnesses, such inquiry is allowed"); *Hammond*, 140 B.R. at 201 ("The scope of a Rule 2004 examination is broad. Indeed, some have compared it to a 'fishing expedition.'"), citing *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983); *In re French*, 145 B.R.

-8-
Case 17-12274-t11    Doc 429    Filed 09/14/18    Entered 09/14/18 15:49:13 Page 8 of 17

991, 992 (Bankr. D.S.D. 1992) ("Rule 2004 is designed to be a quick 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case . . . .").

There are limits, however. An examination about matters unrelated to the debtor's affairs or having effect on the administration of his estate is improper. *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985); *In re Johns Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984). Rule 2004 examinations "cannot stray into matters which are not relevant to the basic inquiry." *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984). A proposed examination may be denied if the purpose is to abuse or harass the target. *Hammond*, 140 B.R. at 201, citing *Mittco*, 44 B.R. at 36.

"It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *Wilcher*, 56 B.R. at 434; *see also In re Mastro*, 585 B.R. 587, 597 (9th Cir. BAP 2018) (quoting *Wilcher*); *In re Yellowstone Mountain Club, LLC,* 2009 WL 982233 (Bankr. D. Mont.) (same); *In re Mezvinsky*, 2000 WL 33950697 (Bankr. E.D. Pa.) (same); *In re Gay*, 2016 WL 1612942, at *2 (Bankr. W.D. Okla.) (same); *In re Continental Forge Co., Inc.*, 73 B.R. 1005 (Bankr. W.D. Pa. 1987) (same); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373 (Bankr. W.D. Pa. 2008) (same).

3.  <u>Rule 2004 as a Pre-litigation Device</u>. Rule 2004 can be used as a "pre-litigation device to determine whether there are grounds to bring an action to determine a debtor's right to discharge a particular debt." *In re Corso*, 328 B.R. 375, 383 (E.D.N.Y 2005); *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); *In re Brooke Corp*., 2013 WL 3948866, at *2 (Bankr. D. Kan.); *In re Recoton Corp.*, 307 B.R. 751, 756 (Bankr. N.D.N.Y. 2004) ("The Rule 2004 discovery sought by the Committee is thus *prima facie* consistent with the Rule's … purposes of allowing the Committee to obtain information necessary to determine whether claims beneficial to the estates exist and whether to pursue such claims.").

Because a Rule 2004 examination can be used as a pre-litigation device, the trustee is not required to show he would likely prevail in a suit before obtaining the discovery. *See In re Symington,* 209 B.R. 678, 684 (Bankr. D. Md. 1997) (as Rule 2004 examinations are taken pre-litigation, they need not be tied to specific factual allegations, and are subject to fewer objections on grounds of relevance).

4. <u>The Court Has Discretion to Tailor Rule 2004 Discovery</u>. Rule 2004 gives the Court discretion to limit examination as justice requires. Rule 2004(a) provides that "On motion of any party in interest, the court *may* order the examination of any entity." (emphasis added). Subsection (b) provides in pertinent part:

> The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a . . . . a reorganization case under chapter 11 of the Code . . . the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

Courts have used this permissive, conditional language to restrict discovery that appears unduly intrusive or burdensome. *See, e.g., In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (although Rule 2004 examination can be compared to a fishing expedition, "the net, in the discretion of the Court, can be carefully stitched to limit its catch"). Courts may "limit, condition or even forbid the use of Rule 2004" where it is used to "abuse or harass[]. . . ." *Martin v. Schaap Moving Sys., Inc.*, 152 F.3d 919, at *3 (2d Cir. 1998) (unpublished), quoting *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984). *See generally In re Georgetown of Kettering*, 17 B.R. 73, 75 (Bankr. S.D. Ohio 1981) (referring to the predecessors of Rule 2004, the court stated: "Obviously, the breadth of the language employed in the Rules is so all encompassing

as semantically to include and encourage harassment on every human subject. Nevertheless, abuse of propriety and the judicial process certainly was never contemplated.").

B.     Matters Considered by the Court.

In reviewing the Debtor's Rule 2004 Motion, the Court considered the following:

1.     Burdensomeness of Production. If the target of Rule 2004 discovery believes the request is unduly burdensome, it has the burden of showing that the burden is in fact undue. *See, e.g., Jobin v. Resolution Trust Corp.*, 156 B.R. 834, 838 (D. Colo. 1993) ("the Bank has not indicated that its records would be too voluminous to search or that any other specific problem complicates its disclosure."); *In re Vantage Petroleum Corp.*, 34 B.R. 650, 652 (Bankr. E.D.N.Y. 1983) (motion to quash denied where, among other factors, movants have not shown that such production would be oppressive or burdensome).

ARCO argues that the burden of producing the requested documents would be extremely high. In support of its position, ARCO submitted the affidavit of John Chavez, a Vice President. Mr. Chavez estimated the total cost of production would be about $114,000, and that it would take about 1000 man-hours. Debtor made no attempt to refute these estimates. ARCO has therefore met its burden of showing the burden of production would be undue. Further, a review of the 40 categories of requested documents and 25 topics for deposition inquiry convinces the Court that the request is extremely broad and unduly burdensome.

2.     Are the Potential Claims Estate Assets? The obvious purpose of the Rule 2004 Motion is to bolster the claims Debtor wishes to bring against ARCO and its officers, directors, and shareholders. By his own admission, however, Debtor does not own the alleged claims.

    a.     Direct Claims. Debtor argues that the MPK Trusts, as owners of ARCO stock, may have direct claims against ARCO or other stockholders for minority oppression. *See,*

*e.g., Walta v. Gallegos Law Firm,* 131 N.M. 544 (Ct. App. 2002). By admission, these claims would not be owned by the bankruptcy estate, but by the MPK Trusts. While it seems likely that that a substantial recovery on such claims would indirectly benefit the Debtor, the fact remains that Debtor seeks extensive discovery on claims his bankruptcy estate does not own.[4]

      b.    <u>Derivative Claims</u>. The Debtor also has alleged that there may be valid shareholder derivative claims against ARCO's officers, directors, and/or shareholders. Any such claims would be owned by ARCO, not Debtor or even the MPK Trusts. *See generally Marchman v. NCNB Texas Nat. Bank*, 120 N.M. 74, 81 (S. Ct. 1995). The benefit to Debtor of a successful derivative claim is more attenuated than a successful direct shareholder claim.

An examination of matters having no relationship to the debtor's affairs and no effect on the administration of his estate is improper. *In re Wilcher*, 56 B.R. at 433; *In re Yahweh Center, Inc.,* 2017 WL 327473 *2 (Bankr. E.D.N.C.) ("[F]or information sought from third parties, requests must bear some relation 'to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.'"). Here, the fact that the claims are not estate assets weakens the Rule 2004 Motion.

    3.    <u>Proper Representative</u>. If the Trusts have a direct action against ARCO, and/or if there are derivative claims against ARCO's officers, directors, or shareholders, the question remains whether Debtor is a proper party to bring those claims. His interests diverge from the

---

[4] Further, minority oppression claims typically can be brought only with closely held corporations. *See Clark v. Sims*, 147 N.M. 252, 256 (Ct. App. 2009) (a close corporation has a small number of stockholders; no ready market for the corporate stock; and substantial majority stockholder participation in management or operations). ARCO disputes that it is closely held, claiming that is has 42 shareholders, a board composed mainly of individuals who are not stockholders, and a market for its stock.

-12-
Case 17-12274-t11    Doc 429    Filed 09/14/18    Entered 09/14/18 15:49:13 Page 12 of 17

interests of the remainder beneficiaries. Further, he wants to sue the remainder beneficiaries. If a trust owns stock and has multiple, conflicting beneficiaries, who gets to decide whether to bring an alleged minority opression claim? How could anyone fairly represent all beneficiaries? These are difficult questions.[5]

    2.    <u>Pending Proceeding Rule</u>. If an adversary proceeding or contested matter is pending between the same two parties, the rules of civil procedure should be used, rather than Bankruptcy Rule 2004. *See In re Blinder, Robinson & Co.*, 127 B.R. 267, 274 (D. Colo. 1991), citing *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674-75 (Bankr. E.D. Pa. 1990). This is the "pending proceeding rule."

A Rule 2004 request must concern evidence relevant to the pending proceeding for the pending proceeding rule to apply. *Brooke Corp.*, 2013 WL 3948866, at *3 ("Where a party requests a Rule 2004 examination and an adversary proceeding or other litigation in another forum is pending between the parties, the relevant inquiry is whether the Rule 2004 examinations will lead to the discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding."). *See generally Wash. Mut.*, 408 B.R. at 51 ("The primary concern of courts is the use of Rule 2004 examinations to circumvent the safeguards and protections of the Federal Rules of Civil Procedure").

Here, there are two pending proceedings that arguably implicate the pending proceeding rule. First, the State Court Action is still pending. *See, e.g., Snyder v. Society Bank,* 181 B.R. 40,

---

[5] There are similar questions about counsel. Because the Trusts are the stockholders, counsel would have to represent the trusts in any minority oppression or derivative claim. If some beneficiaries support the litigation and others oppose it, both the Debtor and his counsel would have a conflict of interest similar to the one Debtor complains about, particularly if the action were brought against the opposing beneficiaries.

42 (Bankr. S.D. Tex. 1994) ("The use of Rule 2004 to further its case in state court constitutes an abuse of Rule 2004."); *Hopewell Intern. Ins.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (denying Rule 2004 motion based on arbitration pending in foreign country). There is a legitimate question whether some or all of the claims Debtor now is considering should have been brought in the State Court Action. *See, e.g., Potter v. Pierce,* 342 P.3d 54, 57 (N.M. 2015) ("[R]es judicata will preclude a . . . claim only if the claim reasonably could and should have been brought during the earlier proceeding"). Until that question is answered, it may not be appropriate to use Rule 2004 broadly.

Second, the adversary proceeding Debtor filed against the Abruzzos is pending. Debtor's initial Rule 2004 motion cited the need for documents to evaluate the disputes at issue in the adversary proceeding.

3. <u>Scrutiny of Pre-Litigation Discovery</u>. As mentioned above, Rule 2004 can be legitimately used as a pre-litigation discovery device. However, because nowhere else in the rules of federal or state civil procedure are parties allowed to go on pre-litigation "fishing expeditions," bankruptcy courts should be careful to balance the estate's right to pre-litigation discovery with the target's right to be protected against improper, unwarranted, or unduly burdensome discovery.

4. <u>Use of Rule 2004 to Harass</u>. Bankruptcy courts should protect Rule 2004 targets from abuse or harassment. Given the history between the parties, including Judge Malott's finding that the Debtor desires to bring additional litigation against the Abruzzos/ARCO, the Court is concerned that Debtor's extremely broad Rule 2004 Motion could be motivated, at least in part, by an improper purpose.

5. <u>Issue and Claim Preclusion</u>. There are serious questions whether the claims Debtor wishes to bring are barred by applicable preclusive doctrines. Despite the Debtor's position that

-14-
Case 17-12274-t11    Doc 429    Filed 09/14/18    Entered 09/14/18 15:49:13 Page 14 of 17

the new claims are not owned by him, and therefore are not precluded by his loss in the State Court Action, the similarity between the claims is marked, and the fact that he proposes to be the plaintiff in the new claims makes the preclusion risk real. *See generally Wilcher*, 56 B.R. at 440 (denying a Rule 2004 motion because the discovery "could only lead to causes of action . . .which have been foreclosed" by res judicata and collateral estoppel).

6. <u>Debtor's Changing Justification for Seeking ARCO Documents</u>. The history of the Rule 2004 Motion raises questions about the Debtor's motivation. In the original Rule 2004 motion, Debtor justified his request for ARCO documents by the need of potential successor trustees to review them, and/or to defend against the Abruzzos' stay relief motions. The current Rule 2004 Motion, on the other hand, focuses on evaluating potential claims against ARCO and its officers, directors, and stockholders. The shift in rationale and emphasis makes the Court wonder about the Debtor's actual motivation for the document request.

7. <u>Information Already in Debtor's Possession</u>. In paragraph 7 of the Rule 2004 motion, Debtor alleges that the Abruzzos centralized control of ARCO and deprived Debtor of his fair share of profits; that the Abruzzos inflate their own salaries to depress dividends; that ARCO retains earnings and inflates costs; and that the Abruzzos usurp corporate opportunities by engaging in side deals for their personal gain. Based on these allegations, Debtor alleges that "Past due income-from dividends that ARCO improperly withheld-could be the bankruptcy estate's most valuable asset, and recovering those past due payments likely represents the best opportunity for a meaningful recovery to creditors in this case." Presumably, the Debtor believes he has enough evidence to support these strong allegations. That evidence, together with the Produced ARCO Documents, should be sufficient to evaluate any potential claims.

8. <u>Confidentiality</u>. Debtor has agreed to keep any documents ARCO produces confidential. Given Debtor's history of violating such confidentiality strictures, as well as Judge Malott's findings about the Debtor's truthfulness, ARCO obviously, and legitimately, is concerned whether any documents it produces would remain confidential.

9. <u>Best Interests of Creditors</u>. It is relevant that the Debtor's creditors do not want the Debtor to keep litigating with the Abruzzos and/or ARCO. The Unsecured Creditors' Committee has told the Court a number of times that it does not think further litigation is in creditors' best interests. Judge Malott stated his opinion that the Debtor wanted to keep suing the Abruzzos: "the clear indication that future litigation will ensure [sic] . . . ." It is reasonable for the Court to take into account the possibility that the Debtor may be motivated by a vendetta rather than a desire to pay his creditors.

C. <u>Weighing the Factors</u>.

All things considered, the Court concludes that it would be fair and reasonable to give Reid, Collins & Tsai access to the Produced ARCO Documents.[6] From what the Court can tell, Reid Collins & Tsai is a reputable firm, employing very able counsel. The Court has no reason to doubt that, if given access to the Produced ARCO Documents, Reid Collins & Tsai would keep the documents confidential.

On the other hand, the Court does not believe it is necessary or desirable to order ARCO to produce additional documents. The Court concludes that the Debtor already has enough information to evaluate the potential claims. Unlike most Rule 2004 motions seeking pre-litigation discovery, there has already been *both* extensive litigation *and* extensive discovery involving the Debtor and ARCO. While it is always nice to get more information, the Court finds that no more

---

[6] The terms of the Confidentiality Order allow this.

information is needed before the Debtor can evaluate any potential claims against ARCO. On balance, the Court finds and concludes that the burdens on and risks to ARCO of additional production outweigh the potential benefits to the estate. The Court also finds that there are enough difficulties and "red flags" relating to the potential claims and the Debtor's motivations to justify a cautious and conservative response to the Rule 2004 Motion.

### III. CONCLUSION

Rule 2004 is broad enough to allow the Court to grant Debtor's Rule 2004 Motion in its entirety. However, for the reasons state above, the Court is unwilling to require ARCO to produce more documents than it already has, let alone open the flood gates as wide as Debtor asks. Rather, the Court believes that a reasonable response to the Rule 2004 Motion is to allow Reid Collins & Tsai to review the Produced ARCO Documents. A separate order will be entered.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 14, 2018.

Copies to: Counsel of Record