UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

VICTOR P. KEARNEY,                                                 Case no. 17-12274-t11

       Debtor.

## **MEMORANDUM OPINION**

Before the Court is the Supplemental Motion for Relief from Automatic Stay Regarding Actions in State Court, filed by Louis Abruzzo and Benjamin Abruzzo, as trustees. For the reasons set forth below, the Court will grant the motion.

### I.      FACTS

The Court finds the following facts, for the limited purpose of ruling on the motion:[1]

Benjamin and Pat Abruzzo owned and developed the Sandia Peak Ski Area and the Sandia Peak Tramway, both owned by Alvarado Realty Company ("ARCO"). The Abruzzos died in a plane crash in 1985, and were survived by their four children, Louis, Benny, Richard, and Mary Pat. The children took over the management of ARCO after their parent' death.

Mary Pat Abruzzo married the Debtor in 1988, when she was 22 years old. She executed a last will and testament on July 8, 1988.

Mary Pat Abruzzo died in 1997 at the age of 31. At the time of her death, she owned about

---

[1] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, *sua sponte*, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade,* 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket"). The Court also made findings from the hearing exhibits admitted into evidence at the final hearing on the Abruzzo trustees' motion for relief from stay, and from the Debtor's bankruptcy schedules and statement of financial affairs.

18.5% of ARCO's stock. Under the terms of her will, the stock was bequeathed to two testamentary trusts (together, the "Trusts" or the "MPK Trusts").

During his lifetime, Debtor is the income beneficiary of the MPK Trusts. Upon his death, the corpus of the trusts is to be distributed to Louis, Benny, and Richard Abruzzo or their children.[2]

Mary Pat Abruzzo's will appointed the Debtor, Louis, and Benny Abruzzo as co-trustees of the MPK Trusts.[3]

Income from the ARCO stock held by the MPK Trusts is substantial. Between 1998 and 2018, the Trusts paid the Debtor a total of about $16,000,000, or about $800,000 per year.

Despite this substantial annuity, relations between the Debtor and Louis and Benny Abruzzo soured. In 2014, the Debtor sued the Abruzzo brothers in New Mexico state court, cause no. D-202-CV-2013-07676 (the "State Court Action"). In the first phase of litigation (in June, 2015), the main issues centered on whether the Abruzzo brothers breached fiduciary duties owed to the Debtor as trustees of the MPK Trusts. In the second phase, (April, 2017) the trial focused on whether the Debtor violated his fiduciary duties as a trustee of the MPK Trusts. The presiding judge assigned to the State Court Action is Hon. Alan Malott.

On July 6, 2015, Judge Malott made the following findings of fact in open court:

- There has been no substantial evidence that the Abruzzos in fact control ARCO;
- I don't find that the Abruzzos misused any control they may have had in the circumstances. The totality on which the entire Plaintiff's case rests is if it's good for ARCO, it must be bad for Victor Kearney. That's not the law; that's not the evidence in this case.
- [T]he Abruzzos' efforts on behalf of ARCO . . . have been . . .extremely successful;
- The fact that the Abruzzos have run their company properly does not translate into a starvation or a partiality on behalf of . . . ARCO over and

---

[2] Richard Abruzzo died in a ballooning accident in 2010, leaving Louis Abruzzo, Benny Abruzzo, and Richard Abruzzo's children as the remaindermen.

[3] Debtor resigned as a trustee on December 6, 2016.

- against the interest of either Mr. Kearney or the remainder beneficiaries . . . . The appropriate totality appears to be in this situation, a rising tide lifts all the boats.
- Mr. Kearney has made an increased distribution of over 800 percent through one of the worst recessions this country has ever seen;
- The Abruzzos do not control the board. There is not a single incident in which it was shown they had their way or forced their agenda onto anyone else.
- The fact that ARCO has grown as large over these last 15 years has . . . made the whole pie bigger and everybody's slice bigger. How that could translate to a reasonable jury into an award of damages of any particular amount, let along 7-some-odd million dollars, does not compute to the Court.

On September 8, 2015, Judge Malott entered an order memorializing his oral ruling.

Judge Malott entered extensive findings of fact and conclusions of law on July 7, 2017.

Among his findings are:

- A trial on the merits was held on June 29, 30, July 1, 2, and 6, 2015;
- After the close of Mr. Kearney's case, the Court granted Defendants' motion for a judgment as a matter of law on [all claims];
- Mr. Kearney admitted that it is a violation of the Trusts' spendthrift clause to promise people payment from the Trusts;
- Mr. Kearney's repeated violations of the Confidentiality Orders and attendant disclosure of both ARCO's discrete financial information as well as information about the Trust assets and operation was a breach of trust;
- The record is replete with Kearney's repeated breaches of his duty as a trustee through self-dealing with third parties, improper disclosures of financial information, and attendant violations of the orders of this court, as well as the clear indication that future litigation will ensure [sic], notwithstanding his resignation as a trustee;
- Clear and convincing evidence exists that Mr. Kearney is unable to successfully manage his financial life on the trust distributions he receives, and is significantly in debt;

Debtor filed this chapter 11 case on September 1, 2017. He has filed a number of plans and disclosure statements. On August 29, 2018, Debtor filed his fifth amended plan.

On July 12, 2018, the UCC filed a competing plan of reorganization (the "UCC Plan").[4] Implementation of the UCC Plan requires, inter alia, state court approval of the following proposed transactions involving, and/or changes to, the MPK Trusts:[5]

1. ARCO would pay $12,571,799.00 to the Trusts in exchange for all ARCO stock held by the Trusts;
2. The Trusts would pay $3,000,000.00 to Mr. Kearney, who in turn would deliver the funds to a Creditor Trustee (as defined in the UCC Plan); and
3. The Allowed Priority Tax Claim of the IRS would be paid over five years from the Petition Date, in February and August of each year, from the net income that would otherwise be distributable to Mr. Kearney from the Trusts.

(the "Proposed Trust Changes").

The parties originally thought the Court should address confirmability of the UCC plan before they returned to state court to seek a ruling on the Proposed Trust Changes. On August 30, 2018, however, the Trustees informed the Court that Judge Malott intended to retire soon. Judge Malott presided over the State Court Action for four years (2013-2017), took weeks of trial testimony, heard arguments of counsel, read many briefs and motions, and ruled on at least four motions for summary judgment. It is undisputed that Judge Malott has significant knowledge about and history with the parties, the MPK Trusts, and the disputes that were litigated in his court. The Abruzzos want to get a ruling on the Proposed Trust Changes from Judge Malott before he retires.

On August 30, 2018, the Trustee filed a motion for relief from stay so they could ask Judge Malott to set a hearing on the Proposed Trust Changes. The Court granted the motion on September 4, 2018.

---

[4] The Court granted Debtor one extension of the "exclusivity period" set out in §1121(d). The Court denied Debtor's second request to extend the exclusivity period. Debtor has appealed the denial.

[5] The UCC filed a First Amended Plan of Reorganization on August 13, 2018, doc. 360 (the "Amended Plan"). The Amended Plan contains the same three significant changes to the MPK trusts.

On September 9, 2018, Judge Malott issued a notice of hearing, setting a four-hour hearing on the Proposed Trust Changes for September 27, 2018.[6]

The parties dispute what Judge Malott can and/or will hear and decide at the hearing, but it seems clear that Judge Malott is willing to hear arguments of counsel about the Proposed Trust Changes, and may be willing to rule on the Proposed Trust Changes.

With limited exceptions, the state court is the proper court to hear and determine state law disputes about testamentary trusts like the MPK Trusts. *See* N.M.S.A § 46A-2-203 ("The district court has exclusive jurisdiction of all proceedings involving a trust."). Thus, before the UCC plan could become effective, the state court likely would have to decide whether to approve the Proposed Trust Changes.

On September 13, 2018, the Abruzzos filed a Supplemental Motion for Relief from the Automatic Stay (the "Supplemental Motion"), asking for additional stay relief so Judge Malott can hear and rule on the Proposed Trust Changes. The Court held a hearing on the supplemental motion on September 17, 2018.

## II. DISCUSSION

A. Modifying the Automatic Stay "For Cause."

The Trustees ask that the Court lift the automatic stay "for cause" under § 362(d)(1). The automatic stay is intended "to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *In*

---

[6] On September 17, 2018, counsel for the Abruzzos represented to the Court that, because of a scheduling conflict with Debtor's state court counsel, Judge Malott may move the hearing to some day in the first two weeks of October, 2018.

*re Curtis*, 40 B.R. 795, 798 (Bankr. D. Utah 1984), quoting *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 55 (2nd Cir. 1976). Nevertheless, bankruptcy courts may modify the automatic stay upon a finding of "cause" to do so. "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), overruled on other grounds, *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011), quoting *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987). Such a finding is considered a finding of fact, reversible only upon an appellate court conclusion that "clear error" was committed. *In re JE Livestock, Inc.,* 375 B.R. 892, 893-94 (10th Cir. BAP 2007).

B.   The *Curtis* Factors.

The Tenth Circuit "has not set forth a precise framework or exhaustive set of factors for analyzing whether cause exists." *In re Gindi*, 642 F.3d at 872. Courts often turn to the 12 non-exclusive factors identified in *In re Curtis,* 40 B.R. 795, 799–800 (Bankr. D. Utah 1984), to assist in the analysis. *See, e.g., In re Busch*, 294 B.R. 137, 141 (10th Cir. BAP 2003) ("Twelve factors were identified in [*Curtis*] as some of the issues a bankruptcy court might consider when determining whether to lift the stay to permit pending litigation in another forum."). The "*Curtis* factors" are:

1. Whether the relief will result in a partial or complete resolution of the issues;
2. The lack of any connection with or interference with the bankruptcy case;
3. Whether the foreign proceeding involves the debtor as a fiduciary;
4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;
5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);
9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties;
11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial;
12. The impact of the stay on the parties and the 'balance of hurt.'

40 B.R. at 799-800.

C. The *Crespin* Factors.

The Court recently issued its opinion in *In re Crespin*, 581 B.R. 904, (Bankr. D.N.M. 2018), in which it identified certain of the *Curtis* factors, and certain other factors, that typically are the most relevant when determining whether to modify the automatic stay to allow a party to proceed with pending state court litigation:

1. Specialized Tribunal. Bankruptcy courts often defer to specialized tribunals to determine disputes involving divorce; child custody; probate proceedings; government contract claims; social security disability claims; and workers' compensation claims.

2. Estate Administration. Would granting stay relief hinder or delay administration of the estate?

3. The Claims Allowance Process. Allowing or disallowing claims is a core bankruptcy function. *See* 28 U.S.C. § 157(b); 11 U.S.C. § 502. Given the centrality of the claims allowance process to the bankruptcy system, the Court generally keeps the stay in place to allow or disallow claims.

4. Judicial Economy. Would lifting the stay promote judicial economy? Does one court have a busier docket than the other? Would judicial effort have to be duplicated?

5. Litigation Expense. Would it be cheaper for the parties to litigate in bankruptcy court or the other tribunal?

6. Prejudice to other Creditors. Would lifting the stay potentially prejudice other creditors for any reason?

7. Likelihood of Success. How strong are the merits of the movant's state court claim?

8. Balance of the Hurt. Is there some reason, not taken into account by the above factors, that the movant or the estate would be prejudiced by lifting the stay or keeping it in place?

D. Weighing the Factors.

The Court weighs the *Crespin* factors, and then the other *Curtis* factors, as follows:

| Factor | Discussion |
| --- | --- |
| 1. Specialized Tribunal | Weighs in favor of lifting the stay. Absent unusual circumstances, disputes about the administration and modification of testamentary trusts are heard by the state district court. |
| 2. Estate Administration | Weighs in favor of lifting the stay. Granting stay relief would expedite administration of the estate because the UCC Plan would not be viable if the Proposed Trust Changes are not approved. |
| 3. Claims Allowance Process | N/A |
| 4. Judicial Economy | Weighs in favor of lifting the stay. Lifting the stay would permit Judge Malott to hear the Proposed Trust Changes before his retirement. Judge Malott is already well acquainted with the facts of the case. If the case were heard by a new state court judge, expense and delay would be greatly increased. Further, allowing the state court to consider the Proposed Trust Changes would expedite the plan confirmation process. |
| 5. Litigation Expense | Weighs in favor of lifting the stay. Allowing Judge Malott to rule on the Proposed Trust Changes, rather than a new state court judge unfamiliar with the facts, would save a lot of time and money. |
| 6. Prejudice to other creditors | Weighs in favor of lifting the stay. Creditors would benefit by stay relief because it likely would hasten the conclusion of this |

|  | bankruptcy case, reduce administrative expense, and increase the net dividend to creditors. |
|---|---|
| 7. Likelihood of Success | Neutral. The Proposed Trust Changes are legitimate and serious, but Debtor's objections to them are also worth serious consideration. |
| 8. Balance of the Hurt | Weighs in favor of lifting the stay. If the stay is not lifted, the parties will lose the "institutional knowledge" of Judge Malott. It would take a lot of time and money to get another state court judge to the same level of familiarity with the facts and law related to this dispute. While there is risk that the state court effort could be futile (e.g. if the UCC Plan is found to be unconfirmable for any reason), the risk of wasted time and effort is greater if the stay is not modified. |

Other factors:

| 9. Whether the relief would result in a partial or complete resolution of the issues. | Weighs in favor of lifting the stay. A ruling by the state court would assist greatly in determining whether the UCC Plan is viable. |
|---|---|
| 10. The lack of any connection with or interference with the bankruptcy case. | Weighs in favor of lifting the stay. A state court ruling on the Proposed Trust Changes is essential to determining the viability of the UCC Plan. |
| 11. Whether the foreign proceeding involves the debtor as a fiduciary. | N/A |
| 12. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation. | N/A |
| 13. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question. | N/A |
| 14. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c). | N/A |
| 15. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f). | N/A |

| | |
|---|---|
| 16. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial. | Favors lifting the stay. Although the parties dispute what Judge Malott can rule on without further pleading and discovery, there is little or no dispute that the state court is readier to rule on the Proposed Trust Changes than this Court, and is the more appropriate forum. |

Overall, the factors weigh heavily in favor of lifting the automatic stay.

### III. CONCLUSION

The Court concludes that there is sufficient "cause" to modify the automatic stay. The Court will enter a separate order granting the stay relief motion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 18, 2018

Copies to: counsel of record