UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

Victor P. Kearney,                                                     No. 17-12274-t11

    Debtor.

## MEMORANDUM OPINION

Before the Court is the Debtor's Emergency Motion to Stay Pending Appeal. By the motion, the Debtor seeks a stay pending his appeal of two related stay relief orders, both concerning a request to have a state court judge hear certain matters within the state court's (likely exclusive) jurisdiction before he retires. The Court held a final hearing on the motion on September 28, 2018. For the reasons set forth below, the Court finds that the motion is not well taken and should be denied.

I.    PROCEDURAL BACKGROUND

Benjamin and Pat Abruzzo owned and developed the Sandia Peak Ski Area and the Sandia Peak Tramway, both through Alvarado Realty Company ("ARCO"). The Abruzzos died in a plane crash in 1985 and were survived by their four children: Louis, Benny, Richard, and Mary Pat. The children took over the management of ARCO after their parents' death.

Mary Pat Abruzzo married the Debtor in 1988, when she was 22 years old. She executed a last will and testament on July 8, 1988.

Mary Pat Abruzzo died in 1997, at the age of 31. At the time of her death, she owned about 18.5% of ARCO's stock. Under the terms of her will, the stock was bequeathed to two testamentary trusts (together, the "Trusts" or the "MPK Trusts").

During his lifetime, Debtor is the income beneficiary of the MPK Trusts. Upon his death,

the corpus of the trusts is to be distributed to Louis, Benny, and Richard Abruzzo or their children.[1]

Mary Pat Abruzzo's will appointed the Debtor, Louis, and Benny Abruzzo as co-trustees of the MPK Trusts.

Income from the ARCO stock held by the MPK Trusts is substantial. Between 1998 and 2018, the Trusts paid the Debtor a total of about $16,000,000, or about $800,000 per year.

Despite this substantial annuity, relations between the Debtor and Louis and Benny Abruzzo soured. In 2014, the Debtor sued the Abruzzo brothers in New Mexico state court, cause no. D-202-CV-2013-07676 (the "State Court Action"). In his amended complaint, filed October 9, 2014, the Debtor alleged, inter alia, that as trustees the Abruzzos withheld distributable income, failed to diversify trust assets, engaged in self-dealing, and committed other breaches of fiduciary duty. The judge assigned to the State Court Action is Hon. Alan Malott.

Judge Malott presided over a trial on the merits in June and July 2015. On July 6, 2015, Judge Malott made the following findings of fact in open court:

- There has been no substantial evidence that the Abruzzos in fact control ARCO;
- I don't find that the Abruzzos misused any control they may have had in the circumstances. The totality on which the entire Plaintiff's case rests is if it's good for ARCO, it must be bad for Victor Kearney. That's not the law; that's not the evidence in this case.
- [T]he Abruzzos' efforts on behalf of ARCO . . . have been . . .extremely successful;
- The fact that the Abruzzos have run their company properly does not translate into a starvation or a partiality on behalf of . . . ARCO over and against the interest of either Mr. Kearney or the remainder beneficiaries . . . . The appropriate totality appears to be in this situation, a rising tide lifts all the boats.
- Mr. Kearney has made an increased distribution of over 800 percent through one of the worst recessions this country has ever seen;

---

[1] Richard Abruzzo died in a ballooning accident in 2010, leaving Louis Abruzzo, Benny Abruzzo, and Richard Abruzzo's children as the remaindermen.

- The Abruzzos do not control the board. There is not a single incident in which it was shown they had their way or forced their agenda onto anyone else.
- The fact that ARCO has grown as large over these last 15 years has . . . made the whole pie bigger and everybody's slice bigger. How that could translate to a reasonable jury into an award of damages of any particular amount, let along 7-some-odd million dollars, does not compute to the Court.

On September 8, 2015, Judge Malott entered an order memorializing his oral ruling.

In 2017, Judge Malott tried the Abruzzos' counterclaims. He issued extensive findings and conclusions on July 7, 2017. Among his findings are:

- A trial on the merits was held on June 29, 30, July 1, 2, and 6, 2015;
- After testifying directly at trial, Mr. Kearney failed to appear for cross-examination and proffered a medical excuse which has never been substantiated in any manner;
- After the close of Mr. Kearney's case, the Court granted Defendants' motion for a judgment as a matter of law on [all claims];
- The court granted the Defendants attorney's fees in the amount of $510,000 plus Gross Receipts Tax;
- The court also awarded $120,215.69 in costs;
- Mr. Kearney admitted that it is a violation of the Trusts' spendthrift clause to promise people payment from the Trusts;
- Mr. Kearney's repeated violations of the Confidentiality Orders and attendant disclosure of both ARCO's discrete financial information as well as information about the Trust assets and operation was a breach of trust;
- The record is replete with Kearney's repeated breaches of his duty as a trustee through self-dealing with third parties, improper disclosures of financial information, and attendant violations of the orders of this court, as well as the clear indication that future litigation will ensure [sic], notwithstanding his resignation as a trustee;
- The court has already found that Mr. Kearney has significant credibility issues. Nothing at trial assuaged those issues;
- Clear and convincing evidence exists that Mr. Kearney is unable to successfully manage his financial life on the trust distributions he receives, and is significantly in debt;
- Mr. Kearney did not participate in a December 2016 mediation in good faith and should pay the full costs of the mediation.

In addition, Judge Malott made findings specific to the necessity of modifying the MPK Trusts:

- The parties have reached a level of discord, distrust, and distaste such that it would be difficult or impossible for Louis Abruzzo or Benjamin Abruzzo to serve appropriately as Trustees, compensated or uncompensated, into the foreseeable future.
- Kearney's conduct has resulted in a toxic relationship between the parties which adversely impacts the operation of the Trust and makes it difficult or impossible for Louis Abruzzo or Benjamin Abruzzo to effectively serve as Trustee.
- Clear and convincing evidence exists that Mary Pat Abruzzo Kearney did not anticipate the facts and circumstances shown by the evidence of this case, and that modification of the Trust is appropriate under 46A-4-412 NMSA.
- Good cause, upon clear and convincing evidence, exists for modification of the Mary Pat Abruzzo Kearney Trust, including but not limited to appointment of a Successor Trustee and establishment of directives for further administration of the Trust and its assets in a manner which will effectively protect all beneficiaries equally.

Judge Malott has presided over the State Court Action from its inception in 2014 until the Debtor filed this chapter 11 case on September 1, 2017.[2]

The bankruptcy case has been pending for more than a year. The Court extended the Debtor's "exclusive" period for proposing a plan of reorganization until June 1, 2018. Seeing insufficient movement toward resolution of the case, the Court denied further motions to extend the exclusivity period.

The unsecured creditors committee appointed in this case (the "UCC") filed a competing plan of reorganization on July 12, 2018. The next day, the Debtor filed his third amended plan of reorganization. Since then, the UCC has amended its proposed plan once and the Debtor has further amended his proposed plan twice.

The UCC plan proposes certain changes to the MPK Trusts, namely:

- That ARCO pay the sum of $12,571,799 to the MPK Trusts in exchange for all ARCO shares held by the trusts;

---

[2] The filing stayed an evidentiary hearing scheduled for September 5, 2017.

- That the Trustees pay the Trust Payment (as defined in the UCC Plan) of $3,000,000 of principal to Mr. Kearney who in turn shall deliver it to the Creditor Trustee (as defined in the UCC Plan); and
- The Allowed Priority Tax Claim of the IRS of $350,890.55 be paid over a period of five years from the Petition Date-on or before September 1, 2022- in February and August of each year, from the net income that would otherwise be distributable to Mr. Kearney from the MPK Trusts.

(the "Proposed Trust Modifications"). The UCC Plan proposes to have the state court consider and approve the Proposed Trust Modifications as a condition to the plan becoming effective.

There has been extensive briefing on the confirmability of the UCC plan, including a 38-page brief filed by the Debtor on August 10, 2018. On August 17, 2018, the Court held an evidentiary hearing on whether the Proposed Trust Modifications rendered the UCC plan unconfirmable on its face. The Debtor filed a further objection on August 23, 2018, objecting to the UCC disclosure statement and arguing its objections to the trust modification portions of the UCC plan.

On August 30, 2018, the Abruzzos filed their Motion for Relief from Automatic Stay to Obtain Hearing Date in State Court (the "Ministerial Stay Motion"). The timing of the Ministerial Stay Motion was prompted by the pending retirement of judge Malott.[3]

The next day, August 31, 2018, after lengthy hearings on the UCC's draft disclosure statement, the Court held a hearing on the Ministerial Stay Motion. Debtor's counsel argued at the hearing and submitted five exhibits (totaling 223 pages) into evidence.

On September 4, 2018, the Court entered its Order Granting in Part the Abruzzo Trustees' Motion for Relief from Automatic Stay (the "Ministerial Stay Order"). The Ministerial Stay Order

---

[3] This was not the Abruzzos' first stay relief motion. On September 7, 2017, the Abruzzos filed a motion for relief from automatic stay, so they could return to state court and get certain matters adjudicated by Judge Malott. That initial stay relief motion was opposed by the Debtor and litigated heavily. To date, the Court has not granted the motion.

modified the automatic stay for the limited purpose of allowing the Abruzzos to ask Judge Malott for a hearing date on the Proposed Trust Modifications.

On September 9, 2018, the Abruzzos filed with the Court a notice of hearing issued by Judge Malott, setting a hearing on the Proposed Trust Modifications.

On September 10, 2018, the Court held continued hearings in the case, mostly relating to the Debtor's fifth amended plan of reorganization. During the hearings, the Abruzzos asked the Court to expand the stay relief granted to allow them to attend the scheduled state court hearing and seek approval from Judge Malott of the Proposed Trust Modifications. The next day the Court issued an order that, inter alia, set a September 13, 2018, deadline for the Abruzzos to file a supplemental stay relief motion (the "Substantive Stay Motion"), and set a final hearing on the motion for September 17, 2018. The Abruzzos filed the Substantive Stay Motion by the deadline.

On September 13, 2018, the Debtor filed an emergency motion to continue the September 17, 2018 hearing. The Court denied the motion the next day.

The final hearing on the Substantive Stay Motion was held as scheduled. Counsel attended and made legal argument. Debtor's counsel also called a witness to testify (Pete Domenici, Jr., the Debtor's state court counsel) and introduced exhibits into evidence.

On September 18, 2018, the Court entered a 10-page memorandum opinion and an order granting the Substantive Stay Motion (the "Substantive Stay Order"). The Debtor immediately appealed, and, on September 19, 2018, filed the emergency motion for stay pending appeal (the "Motion").

## II. DISCUSSION

A. Bankruptcy Rule 8005.

Bankruptcy Rule 8005 allows bankruptcy courts to issue stays pending appeal. Factors to consider include: "(1) whether the stay applicant has made a strong showing that they are likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770 (1987)). Factors one and two—likelihood of success and irreparable harm—are the most critical. *Nken*, 556 U.S. at 434 (explaining that "[t]he first two factors of the traditional standard are the most critical."). The movant has the burden of demonstrating that the factors weigh in its favor. *Securities Investor Protection Corp. v. Blinder, Robinson & Co. Inc.*, 962 F.2d 960, 968 (10th Cir. 1992) (denial of stay was proper where movant failed to make a showing of likely success, harm, etc.).

B. Likelihood of Success on the Merits.

The Court finds that the Debtor is not likely to succeed on the merits of the appeal.

1. The Ministerial Stay Order. Debtor argues that, before entering the Ministerial Stay Order, the Court was required to weigh the so-called *Curtis* factors, named after *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). That argument lacks merit; the Court need not consider the *Curtis* factors to determine whether "cause" to lift the automatic stay is proper. The Tenth Circuit has not "set forth a precise framework or exhaustive set of factors for analyzing whether cause exists." *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), overruled on other grounds, *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011). It is true that when a party seeks stay relief, courts often look to the *Curtis* factors for guidance.

*See, e.g., Dampier v. Credit Investments, Inc. et al. (In re Dampier)*, 2015 WL 6756446, at *4 (10th Cir. BAP) (courts often rely on the *Curtis* factors). While courts often rely on the *Curtis* factors, a weighing of the factors is not required. Section 362(d)(1) requires the court to find "cause" before lifting the automatic stay. Whether "cause" exists depends on the totality of the circumstances. *In re R.J Groover Constr. L.L.C.*, 411 B.R. 473, 477 (Bankr. S.D. Ga. 2008). Analysis of the totality of the circumstances *may* include the relevant *Curtis* factors, but that is not a requirement. *See, e.g., In re Poseidon Concepts Corp.*, 515 B.R. 811, 814 (Bankr. D. Colo. 2014) ("In those cases where the movant seeks relief in order to continue litigation in another forum, courts frequently analyze the factors set out in [*Curtis*] *as an aid to their totality of the circumstances inquiry*.") (emphasis added) (internal citations omitted).

Implicit in the fact that the Court entered the Ministerial Stay Order is the finding that there was cause to do so. That finding cannot seriously be questioned. The Ministerial Stay Order was entered to allow the Abruzzos to ask Judge Malott for a hearing. The Ministerial Stay Order did not allow the Abruzzos to litigate the matters set at any hearing.

Given the ministerial nature of the relief sought, the debtor had sufficient notice and an opportunity to be heard. The issue of returning to state court had been raised, and much debated, for months. The UCC's plan was filed on July 12, 2018. The centerpiece of the UCC plan is to seek state court approval of the Proposed Trust Modifications.

Since July 12, 2018, the Debtor had been aware of, and indeed singularly focused on, the proposal to ask the state court to approve the Proposed Trust Modifications. That aspect of the UCC Plan has been thoroughly briefed and argued. The only change after July 12, 2018, was that the Abruzzos asked for the hearing sooner than anticipated, due to Judge Malott's upcoming retirement.

2. <u>The Substantive Stay Order</u>. The Substantive Stay Order was entered after substantial notice and a hearing. Before ruling on the Substantive Stay Motion, the Court weighed the *Curtis* factors and the *Crespin* factors. The Court held a final, evidentiary hearing, admitted trial exhibits, and heard testimony from Pete Domenici Jr., the Debtor's state court counsel. The Court heard opening and closing arguments. It then issued a 10-page memorandum opinion. The reasons for lifting the automatic stay are compelling, as set forth in the opinion.

The Debtor argued for the first time during oral argument that there is insufficient evidence that Judge Malott will retire soon. This argument fails. First, during the final hearing on the Substantive Stay Motion, the Debtor never took issue with the assertion that Judge Malott was soon to step down. The Debtor's state court counsel, Pete Domenici Jr., testified at length during that hearing. He never questioned the accuracy of the Abruzzos' assertion about the timing of Judge Malott's retirement. The hearing notices issued by Judge Malott are consistent with his retirement in the near future. Now is not the time to raise the issue. Raising it for the first time during oral argument is too little, too late.

Further, it may not be that important in any event. The fact that the Proposed Trust Modifications could be ruled on as soon as next week is a significant benefit to this bankruptcy estate. If Judge Malott does not approve them, then the UCC Plan would be withdrawn and the creditors would focus on the Debtor's plan. That would simplify this case a great deal. On the other hand, if Judge Malott approves the Proposed Trust Changes, the path to confirmation of the UCC Plan would be shorter and straighter, a substantial benefit to the estate's creditors.

3. <u>Orders granting or denying stay relief are reviewed for abuse of discretion</u>. Stay relief orders are overturned on appeal only if the appellate court finds that the bankruptcy court abused its discretion. *In re Jim's Maintenance & Sons Inc.*, 418 Fed. App'x 726, 727-28 (10th Cir.

2011); *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1023 (10th Cir. 1994). Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. *Dampier*, 2015 WL 6756446, at *3 (quoting *Moothart v. Bell*, 21 F.3d 1499 (10th Cir. 1994)). An abuse of discretion occurs when the trial court's decision is arbitrary, capricious, or whimsical, or results in a manifestly unreasonable judgment. *Dampier,* 2015 WL 6756446, at *3 (quoting *United States v. Weidner,* 437 F.3d 1023, 1042 (10th Cir. 2006)). Given the facts of this case, the Court does not believe it likely that the reviewing court will make such a finding.

C.  Irreparable Injury.

The Debtor would not be irreparably injured if no stay pending appeal is granted. No one knows when, how, or even if Judge Malott will rule. He may rule for or against the Debtor. He may decide that he cannot rule before he retires. He may decide that significant pleading and litigation is required before the state court can rule on the Proposed Trust Modifications. Whatever he decides, his rulings would be subject to appeal.

To implement the UCC plan, the state court will have to rule eventually on the trust modification proposals; the only question is when. The Debtor is represented by able counsel, both in this case (Foley and Lardner) and in the state court action (Domenici Law Firm, PC). Judge Malott moved the hearing date once so the Domenici firm could be sure to attend. Because Judge Malott's ruling is uncertain and the UCC plan would eventually lead to state court litigation in any course, the Debtor will suffer no irreparable injury if the trust modification issues are decided sooner rather than later. In fact, if substantial time and money can be saved by having Judge Malott rule on the issues, the Debtor's estate would be benefited, rather than harmed.

It is true that, if the UCC Plan is not confirmed, the scheduled state court hearing could be rendered unnecessary. Thus, a stay pending appeal arguable could avoid the "harm" of the hearing's expense. In the Court's opinion, this possibility does not outweigh the potential large savings of allowing the hearing to proceed. The UCC Plan appears to have strong creditor support. One of the main legal barriers to confirmation of that plan is state court approval of the Proposed Trust Modifications. All things considered, allowing the scheduled state court hearing to proceed next week benefits rather than harms the Debtor's bankruptcy estate.

D.     <u>Whether the Stay Would Substantially Harm the Other Parties</u>.

A stay pending appeal would substantially harm the Debtor's creditors. Entry of a stay pending appeal would constitute a de facto reversal of the Substantive Stay Order. A stay pending appeal would mean that Judge Malott would retire before he could hear any trust modification matters. Judge Malott has spent years with the Debtor's case, seen perhaps dozens of motions argued, and spent weeks in trial. As noted above, he has already made findings about the need to modify the MPK Trusts ("Good cause, upon clear and convincing evidence, exists for modification of the Mary Pat Abruzzo Kearney Trust, including but not limited to appointment of a Successor Trustee and establishment of directives for further administration of the Trust and its assets in a manner which will effectively protect all beneficiaries equally."). The time and cost to bring another judge up to Judge Malott's level of knowledge would be significant. If a stay pending appeal were issued, the time and money that the estate may save by taking advantage of Judge Malott's "institutional knowledge" would be lost.

In addition to the loss of institutional knowledge, a stay pending appeal would cause further expense and delay in this bankruptcy case. The Court is concerned that the administrative expenses

of this chapter 11 case are too high, and are getting higher. A prompt resolution of the case, whether through plan confirmation, conversion, or dismissal, is needed.

E.     Whether The Stay Would Serve The Public Interest.

A stay pending appeal would not serve the public interest. It would interfere with the administration of the bankruptcy case, and jeopardize reorganization efforts. A stay would further delay a case already proceeding at a snail's pace, and would add expense to an already expensive case. Judicial efficiency is a public interest. *See Nero v. Mosby,* 2017 WL 1048259, at *3 (D. Md.) ("The public interest in judicial efficiency would be hampered by a stay in this case."). Prompt payment of creditors also is a public interest. *See In re Quade*, 496 B.R. 520, 529-30 (Bankr. N.D. Ill. 2013); *In re Taylor,* 450 B.R. 577, 580 (Bankr. W.D. Pa. 2011).

### III.     CONCLUSION

The Court concludes that the Debtor has not carried his burden of showing that he is likely to succeed on the merits, nor that he would be irreparably harmed if the Motion is denied, nor that granting the Motion would not harm his creditors, nor that the requested stay would serve the public interest.

The Abruzzos and the UCC argued during oral argument that, since the Court terminated exclusivity, the Debtor has worked hard to thwart a competing plan of reorganization, while at the same time making only half-hearted efforts to pay his creditors. The Court is not prepared to accept the argument, but the Motion is consistent with the theory. Whether the Abruzzos and the UCC are right or wrong about the Debtor's goals and motivations, the Court wants to get this case moved toward a conclusion as soon as practicable.

The Motion will be denied by separate order.

-12-
Case 17-12274-t11    Doc 486    Filed 10/01/18    Entered 10/01/18 10:12:53 Page 12 of 13

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 1, 2018

Copies to: counsel of record