UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

VICTOR P. KEARNEY,                                          No. 17-12274 t11

  Debtor.

## OPINION

Before the Court is the Debtor's Application to Employ Robert A. Dotson, Dotson Law ("Dotson") as Counsel, filed October 7, 2018, doc. 504 (the "Application"). The Debtor seeks to retain Dotson to represent him in a lawsuit filed in the United States District Court in Nevada. The Court held a final hearing on the Application on November 28, 2018. For the reasons set forth below, the Court finds that the Application is not well taken and will be denied, without prejudice to renewing the application if events develop that make pursuit of the Nevada lawsuit more likely to benefit the estate.

I.  FACTS

Mary Pat Abruzzo married the Debtor in 1988, when she was 22 years old. She executed a last will and testament on July 8, 1988.

Mary Pat Abruzzo died in 1997, at the age of 31. At the time of her death, she owned about 18.5% of Alvarado Realty Company ("ARCO") stock. Under the terms of her will, the stock was bequeathed to two testamentary trusts (together, the "Trusts" or the "MPK Trusts") for the benefit of the Debtor during his lifetime. Mary Pat Abruzzo's will appointed Louis and Benny Abruzzo (the "Trustees") as co-trustees of the MPK Trusts.[1]

Relations between the Debtor and Trustees soured. In 2013 the Debtor sued the Trustees

---

[1] The will also appointed the Debtor as a co-trustee, but he has since resigned.

in New Mexico state court, cause no. D-202-CV-2013-07676 (the "State Court Action"), alleging that the Trustees had breached their duties to him. Judge Alan Malott presided over the State Court Action from its inception until this bankruptcy case was filed in September 2017.

In his voluntary bankruptcy petition, in response to the question "where [do] you live," Debtor put 4700 Hannett Ave. NE, Albuquerque, NM 87110. The petition includes a space for additional addresses. The Debtor left that space blank.

Debtor's statement of financial affairs includes a sworn statement of all the places he lived in the three years before filing bankruptcy. Debtor listed lists four Albuquerque addresses, going back as far as January 1, 2013. Debtor listed no Nevada addresses.[2] Finally, the Debtor's monthly operating reports show his address as 4700 Hannett Ave. NE, Albuquerque, NM.[3]

The UCC filed an amended plan of reorganization on August 13, 2018. The plan is conditioned on state court approval of the certain transaction among the estate, ARCO, and the Trusts.[4] If approval is given, the Trusts would pay the estate $3,000,000 in exchange for settling all claims. The $3,000,000 would be used to pay creditors. There would be no proceeds from the Nevada lawsuit because the UCC plan extinguishes all claims Debtor has against the Trustees, ARCO, et al.

---

[2] Debtor's Schedule A lists a house in Zephyr Cove, Nevada. Until very recently, Debtor has represented to the Court and creditors that he would sell the house. He had the house listed with a broker, and received an offer for it. Debtor's plan of reorganization proposes to sell the house and pay the net proceeds to creditors. Debtor now tells the Court, thorough counsel, that he might not sell the house, and also that he lives in it, not at 4700 Hannett Ave. NE.

[3] After the Nevada lawsuit was filed and Debtor began taking the position that he was a Nevada citizen, he started listing his Zephyr Cove address as his residence.

[4] Specifically, the actions are: 1) ARCO repurchasing its stock held by the Trusts for $12,571,799.00, 2) the Trustees paying $3,000,000 to the Debtor in settlement of all claims; the Debtor in turn would use the money to pay his creditors, and 3) the Abruzzos, as trustees, would pay the IRS's priority claims of $350,890.55 against the Debtor from future trust distributions over five years (together, the "Three Actions").

The Debtor has also filed a plan of reorganization. The plan has two options. Under the option one, Debtor would obtain "exit financing" of about $2.5 Million and use the money to pay creditors, including administrative claimants. Under this option, Debtor would keep any litigation proceeds, including any proceeds from the Nevada litigation. Under option two, Debtor would pay his creditors over time (possibly 20 or more years). Net proceeds from the Nevada litigation under option two would be paid to creditors.

On August 30, 2018, the Trustees filed a Motion for Relief from Automatic Stay to Obtain Hearing Date in State Court (the "Ministerial Stay Motion"). The Ministerial Stay Motion was prompted by the pending retirement of Judge Malott. The Court heard argument on the Ministerial Stay Motion the next day, August 31, 2018. The Trustees argued that significant time and judicial resources would be saved if Judge Malott could rule on the Three Actions before he retired, given his knowledge and experience with the Trusts and the parties.

On September 4, 2018, the Court entered its Order Granting in Part the Abruzzo Trustees' Motion for Relief from Automatic Stay (the "Ministerial Stay Order"). The Ministerial Stay Order modified the automatic stay for the limited purpose of allowing the Trustees to ask Judge Malott for a hearing date on the Three Actions. The Trustees obtained a hearing date before Judge Malott.

On September 10, 2018, the Trustees filed an amended stay relief motion, asking the Court to expand the stay relief to allow them to attend the scheduled state court hearing and seek approval from Judge Malott of the Three Actions (the "Substantive Stay Motion"). The Court held a final hearing on the Substantive Stay Motion on September 17, 2018. On September 18, 2018, the Court entered a 10-page memorandum opinion and an order granting the Substantive Stay Motion (the "Substantive Stay Order").

Judge Malott scheduled a hearing on the Three Actions for October 3, 2018. The afternoon before the hearing, the Debtor removed the State Court Action to the United State District Court for the District of New Mexico, claiming diversity jurisdiction. The removed action was assigned to the Hon. Judy Herrera.

In addition, on October 2, 2018, Dotson filed a lawsuit on behalf of the Debtor and against the Trustees in the United States District Court for the District of Nevada (the "Nevada Lawsuit").[5] The jurisdictional basis of the complaint was diversity of citizenship, alleging that Debtor was a citizen of Nevada.

On October 10, 2018, Judge Judy Herrera referred the removed state court action to this Court. In her referral order Judge Herrera found that the Debtor's diversity claim was frivolous and a "sham litigation tactic." Judge Herrera further ruled that this Court could determine whether to remand the action. On October 11, 2018, the Court abstained from and remanded the State Court Action.

Judge Malott held a hearing on the Three Actions on October 23, 2018. On October 31, 2018, Judge Malott issued his Findings of Fact and Conclusions of Law, approving the Three Actions.

Under the proposed fee agreement with Dotson, the estate would pay $400 per hour for partner time, $250 per hour for associate time, and $110 per hour for paralegal time.

The Debtor has already retained the following professionals:

- Jason Cline;
- Don F. Harris;
- Foley & Lardner;
- Reid Collins & Tsai;
- Domenici Law Firm; and
- Lain Falkner.

---

[5] Debtor and the Dotson Law firm signed in a fee agreement on September 20, 2018.

The UCC has also retained the following professionals, who are to be paid from the bankruptcy estate:

- Walker & Associates; and
- Burt & Co.

The bankruptcy case has now been pending for over a year.

## II. DISCUSSION

A. Employment of Professionals under § 327(a).

11 U.S.C. § 327(a) provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Bankruptcy Rule 2014(a) provides in part:

> The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

The court has discretion to approve or deny § 327(a) employment applications. *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir. 1992) ("the discretion of the bankruptcy court must be exercised in a way that it believes best serves the objectives of the bankruptcy system."). The court should exercise its discretion in a manner that:

> best serves the objectives of the bankruptcy system. Among the ultimate considerations for the bankruptcy courts in making these decisions must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.

*In re Computer Learning Centers, Inc.*, 272 B.R. 897, 903 (Bankr. E.D. Va. 2001) (citing *In re Harold & Williams Development Co.*, 977 F.2d 906, 910 (4th Cir.1992). 3 Collier on Bankruptcy, ¶ 327.02[1] (16th ed.) is informative:

> The determinative question in approving the employment of a professional person is whether it is reasonably necessary during the administration of the estate to have professional persons, such as attorneys or accountants, employed. An attorney for a trustee should not be employed unless the attorney's special professional skills are necessary for the protection and benefit of the estate or will further the aims of the case.

It is unusual for a bankruptcy court to deny a debtor-in-possession's motion to employ counsel. *See, e.g., Schwartz v. Geltzer (In re Smith)*, 507 F.3d 64, 71 (2d Cir. 2007) (courts should interfere only in rare circumstances). Applications are denied, however, when the bankruptcy court finds that the estate would not benefit by allowing the employment. *See, e.g., In re Osborne*, 2012 WL 6680356, at *2 (Bankr. D. Kan.) (retention of counsel by trustee to revoke the debtor's discharge would not benefit the estate); *In re Rheam of Indiana, Inc.*, 111 B.R. 87, 100 (Bankr. E.D. Pa. 1990), *aff'd in part, vacated in part*, 133 B.R. 325 (E.D. Pa. 1991) ("[I]t is not the function of a court to blindly appoint counsel first, upon request and then ask questions or cut compensation later …. It is never presumed that a request for counsel is justified."); *In re Kingsway Purchasing*, 69 B.R. 713 (Bankr. E.D. Mich. 1987) (committee's application to employ a committee secretary denied absent sufficient showing of necessity).

B.  <u>Factors Weighing Against Approving the Application</u>.

1.  <u>Likely dismissal of the Nevada Lawsuit because of the lack of diversity jurisdiction</u>. It appears likely that the Nevada Lawsuit is subject to dismissal for lack of diversity jurisdiction. Since 2013, the Debtor has never alleged any domicile in any state besides New Mexico. According to his sworn filings, since 2013, Debtor has only lived in New Mexico. There was no hint of living or claiming domicile in any other state. Debtor has represented himself as living in

New Mexico throughout the bankruptcy. Debtor should be estopped from alleging a new domicile for the convenient purpose of establishing diversity jurisdiction. *See In re Riazuddin*, 363 B.R. 177, 185 (10th Cir. BAP 2007) (citing *Johnson v. Lindon City Corp.*, 405 F.3d 1065 (10th Cir. 2005)) ("[W]here a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.").

The dubious nature of Debtor's new claim to Nevada citizenship was noted by Judge Herrera in her order Denying Emergency Motions:

> Kearney's diversity allegations are frivolous. The notice of removal claims, for the first time, that Kearney is a Nevada citizen. However, he filed the original lawsuit against the Abruzzos in New Mexico's Second Judicial District Court in 2013 and the New Mexico bankruptcy case in 2017.... Kearney's attempt to remove the actions directly to this Federal District Court appears to be a sham litigation tactic to avoid a ruling by the Bankruptcy Court.

(18-cv-00922 JCH/SCY, doc. 12.)

Without Nevada citizenship, the Nevada district court lacks diversity jurisdiction over the Nevada Lawsuit, and will dismiss it. In such an event, the estate would not need Nevada counsel.

2. <u>Judge Malott's Ruling on the Merits</u>. Second, the gravamen of the Nevada Lawsuit is that the Trustees violated their fiduciary duties by supporting the Three Actions and the UCC plan. Specifically, the lawsuit demands monetary and injunctive relief from the Trustees for "work[ing] with the UCC to devise a protocol that would allow the UCC to invade the corpus of the MPK Trust and reduce and alienate the future income distributions from the MPK trust." Judge Malott's ruling completely vindicated the Trustees. Judge Malott ruled that the Three Actions were consistent with the Trustee's duties to the Debtor and complied with New Mexico law. Unless Judge Malott's ruling is reversed, the Nevada Lawsuit is meritless. There is no need, and likely no ability, to pursue the Nevada Lawsuit unless and until Judge Malott's ruling is reversed.

3. <u>Benefit to the Estate</u>. Even if the Nevada Lawsuit were ultimately successful, benefit to the bankruptcy estate is not assured. Under two of the three confirmation scenarios, the net proceeds would benefit Debtor but not his estate.

    a. <u>The UCC Plan is Confirmed</u>. If the UCC plan is confirmed, the estate would bear all costs of Dotson's employment, while the claims would be settled. Clearly, there would be no benefit to the estate.

    b. <u>Debtor's Plan is Confirmed Under Option One.</u> Similarly, if the Debtor's plan is confirmed and option one is chosen by creditors, the estate would pay all costs associated with Dotson's employment, while all proceeds would accrue to Debtor, not his estate.

    c. <u>Debtor's Plan is Confirmed Under Option Two</u>. Finally, if the unsecured creditors vote against the Debtor's plan and the Debtor is forced to seek "cramdown" of the plan under option two, there are serious issues whether the Plan violates the "absolute priority rule" of 11 U.S.C. § 1129(b)(2)(B). While finial determination of that issue should and will be reserved for a hearing on plan confirmation, the serious nature of the absolute priority rule problem indicates that it would be more prudent to defer employment of Nevada counsel until after a plan confirmation hearing.

4. <u>Administrative Expenses</u>. Administrative expenses in this case are too high and continue to increase. There currently are at least four law firms and two accounting firms whose fees are estate obligations. Professional fees are going to be a major issue after plan confirmation. It is in the best interest of the estate to avoid further fees unless and until it becomes clear that there would be a substantial benefit. Given the problems outlined above, the Court cannot now make a finding that granting the application to employ Dotson would benefit the estate.

## III. CONCLUSION

For now, the Court cannot find that granting the Application would benefit the estate. At some later date, perhaps, depending on whose plan is confirmed, whether Judge Malott's ruling is affirmed on appeal, and a final determination of the Debtor's citizenship, it might make sense to grant the Application. Not now. The Court will enter a separate order denying the Application.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 7, 2018

Copies to: counsel of record