UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

VICTOR P. KEARNEY,　　　　　　　　　　　　　　　　　　Case No. 17-12274 t11

　　　Debtor.

**OPINION**

Before the Court is the debtor's application to employ criminal defense counsel to defend him against tax fraud and conspiracy charges. The unsecured creditors' committee objected, arguing that the proposed representation would not benefit the estate and therefore cannot be approved. After a final hearing on the matter, the Court concludes that the application must be denied.

I.　　FACTS

The Court finds the following facts for the limited purpose of ruling on the application:[1]

Debtor Victor Kearney filed this chapter 11 case on September 1, 2017. At the time, he was embroiled in a state court lawsuit he had brought against the trustees of two trusts of which he was the income beneficiary (the "Abruzzo Trusts"). Debtor had accused the trustees of breaching their fiduciary duties to him by taking actions that wrongfully reduced his trust income. The trustees asserted counterclaims. Debtor lost his suit against the trustees (subject to a pending appeal) while the trustees prevailed in their counterclaims against him.

---

[1] The Court took judicial notice of its docket in the main case as well as the dockets in the state court action and the criminal proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

On or about July 28, 2017, the state court judge sent a letter to the Internal Revenue Service and the New Mexico Taxation and Revenue Department, alerting them to trial evidence that Debtor had not properly reported or paid his income taxes for several years.

On December 6, 2017, the IRS filed an amended proof of claim in this case for $596,164.75.

An unsecured creditors' committee ("UCC") was formed in this case. On February 28, 2019, the Court confirmed a plan of reorganization filed by the UCC. Debtor appealed the confirmation order. The appeal is pending.

On August 27, 2019, the United States of America issued and filed an indictment against Debtor, asserting counts for conspiring to commit fraud on the IRS and for making and subscribing false income tax returns.

Debtor entered a not guilty plea at his initial appearance, held September 12, 2019. Amy Sirignano appeared for Debtor at the initial appearance.[2]

Debtor signed an engagement letter with Ms. Sirignano on September 16, 2019. The terms of the engagement include a $5,000 retainer, payment of $4,000 a month, and the pledge of certain estate property (art work) to secure payment of the attorney fees.

On September 27, 2019, Debtor filed an application to employ Ms. Sirignano as special counsel under § 327(e)[3] to defend him against the tax fraud and conspiracy charges. The UCC and one creditor objected.

Debtor is not currently employed, nor has he been employed during this chapter 11 case. His sole source of income is from the Abruzzo Trusts. Nothing in the record of this heavily litigated

---

[2] From what the Court has gathered from its limited contact with Ms. Sirignano, she is a very skilled criminal defense attorney with an excellent reputation.
[3] All statutory references are to 11 U.S.C. unless otherwise indicated.

bankruptcy case indicates that Debtor has worked in many years. He has managed to accrue huge debts, both pre- and post-petition, but has not earned any income. None of the Debtor's proposed plans of reorganization filed in the case ever proposed that Debtor would get a job to help pay his creditors.

## II. DISCUSSION

A. Ms. Sirignano Cannot Be Employed Under Section 327(e).

As an initial matter, Ms. Sirignano cannot be employed under § 327(e) because she did not represent the debtor pre-petition. § 327(e) provides:

> (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, *an attorney that has represented the debtor*, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

(emphasis added). This subsection has four requirements: (a) the attorney must be employed for a specified, special purpose other than representing a debtor/trustee in conducting the case; (b) the attorney must have previously represented the debtor, (c) the attorney's employment must be in the best interest of the estate, and (d) the attorney must not have any interest adverse to the debtor or the estate with respect to the matter on which the attorney is to be employed. *In re Johnson*, 433 B.R. 626, 635 (Bankr. S.D. Tex. 2010), citing *In re Potter*, 2009 WL 2922850, at *1 (Bankr. D.N.M.).

Ms. Sirignano has not previously represented the Debtor so she does not qualify for § 327(e) employment. *See In re Champ Car World Series, LLC,* 411 B.R. 619, 624 (Bankr. S.D. Ind. 2008) (clear language of the section requires prior representation of the debtor); *In re J.S. II, LLC*, 371 B.R. 311, 319 (Bankr. N.D. Ill. 2007) (most courts hold that special counsel must have represented the debtor at some point prior to the commencement of the case); *Meespierson, Inc. v.*

*Strategic Telecom, Inc.,* 202 B.R. 845, 848-50 (D. Del. 1996) (special counsel application could not be approved because there was no prior representation); *In re Black & White Cab Co. Inc.,* 175 B.R. 24, 26 (Bankr. E.D. Ark. 1994) (attorney must have previously represented debtor); *In re French,* 139 B.R. 485, 489 (Bankr. D.S.D. 1992) (counsel with no prior connection to debtor could not be retained under § 327(e)); *In re Ginco Inc.*, 105 B.R. 620, 621 (D. Colo. 1988) (§ 327(a) applies, rather than § 327(e), where attorney did not represent the debtor pre-petition). While there is some contrary case law, *see, e.g., In re Scranton Electric Constr. Co.*, 105 B.R. 1 (Bankr. M.D. Pa. 1989); and *In re Sonya D. Int'l, Inc.*, 484 B.R. 773, 780 (Bankr. C.D. Cal. 2012), the Court does not find it persuasive. The plain textual requirement that the "attorney . . . has represented the debtor" must be given effect.

B.  <u>Under § 327(a), the Proposed Representation Must be Reasonably Necessary</u>.

Ms. Sirignano could be employed under § 327(a), however, which provides:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.[4]

The difference between the § 327(a) and § 327(e) relates primarily to conflicts of interest, not the scope of representation. It is the Court's view that "special counsel" can be retained under § 327(a) so long as she represents or assists the trustee in carrying out the trustee's duties under the Code.

When ruling on an employment application under § 327(a), the Court must decide "whether it is reasonably necessary during the administration of the estate" to employ the proposed

---

[4] In chapter 11 cases, a debtor in possession has most of the rights of a trustee, including the right to retain professional persons. *See* § 1107(a).

professional person. 3 Collier on Bankruptcy ¶ 327.02[1] (16th ed.), citing *In re Computer Learning Ctrs., Inc.,* 272 B.R. 897 (Bankr. E.D. Va. 2001); *In re Kingsway Purchasing,* 69 B.R. 713 (Bankr. E.D. Mich. 1987); *In re The Bible Speaks*, 67 B.R. 426 (Bankr. D. Mass. 1986); *see also In re Jarvis*, 53 F.3d 416 (1st Cir. 1995) (when dealing with a *nunc pro tunc* application for employment, court should in the first instance determine whether the services were reasonably necessary).

Employment cannot be "reasonably necessary" unless it would benefit the estate. As stated in Collier:

> The determinative question in approving the employment of a professional person is whether it is reasonably necessary during the administration of the estate to have professional persons, such as attorneys or accountants, employed. An attorney for a trustee should not be employed unless the attorney's special professional skills are necessary for the protection and benefit of the estate or will further the aims of the case.

3 Collier on Bankruptcy, ¶ 327.02[1] (16th ed.). In *In re Harold & Williams Development Co.*, the Fourth Circuit stated:

> Thus, once the trustee meets the burden of demonstrating that an applicant for professional employment is qualified under § 327, *see* Bankr. Rule 2014(a), the discretion of the bankruptcy court must be exercised in a way that it believes best serves the objectives of the bankruptcy system. Among the ultimate considerations for the bankruptcy courts in making these decisions must be *the protection of the interests of the bankruptcy estate and its creditors*, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.

977 F.2d 906, 910 (4th Cir. 1992) (emphasis added); *see also In re AroChem Corp.*, 176 F.3d 610, 621 (2d Cir. 1999) (citing and quoting *Harold & Williams*); *Computer Learning Centers, Inc.*, 272 B.R. at 903 (same); *In re Ballard*, 2013 WL 5924984, at *1 (Bankr. E.D.N.C.) (same); *In re Biddle*, 2012 WL 6093926, at *3 (Bankr. D.S.C.) (same); *In re Persaud*, 496 B.R. 667, 671 (Bankr. E.D.N.Y. 2013) (same).

The discussion of this issue in *In re Rheam of Indiana, Inc.,* 111 B.R. 87 (Bankr. E.D. Pa. 1990), *aff'd in part, vacated in part,* 133 B.R. 325 (E.D. Pa. 1991) is instructive:

> we conclude that it is clearly *not* the function of a court to blindly appoint counsel first, upon request, and then ask questions or cut compensation later. Entry of an order appointing counsel is a judicial act, not to be exercised lightly. *See In re Arlan's Department Stores,* 615 F.2d 925, 932 (2d Cir. 1979). It is never *presumed* that a request for counsel is justified. Rather, it is hornbook law that "[a]n attorney for the trustee should not be employed unless the attorney's special professional skills are necessary for the protection and benefit of the estate or for the furtherance of the aims of the case." 2 COLLIER ON BANKRUPTCY, ¶ 327.01, at 327–3 (15th ed. 1989).

111 B.R. at 100; *see also In re Kearney*, 2018 WL 6443993, at *3 (Bankr. D.N.M.) (employment applications denied when the bankruptcy court finds that the estate would not benefit).

C. <u>Benefit to the Debtor is Not Enough</u>.

Courts have denied professional employment applications if the representation would benefit the debtor but not the estate. *See, e.g., Lewis v. Fitzgerald*, 295 F.2d 877 (10th Cir. 1961) (attorney fees incurred resisting an objection to the granting of a discharge benefited the debtor but not the estate and therefore cannot be paid from estate assets); *In re Jones* 665 F.2d 60 (5th Cir. 1982) (fees incurred defending the discharge not compensable from the estate); *In re Weingarden*, 84 B.R. 691 (Bankr. S.D. Cal. 1988) (same); *In re Ryan*, 82 B.R. 929 (N.D. Ill. 1987) (same); *In re Cleveland*, 80 B.R. 204 (Bankr. S.D. Cal. 1987) (same).

D. <u>Criminal Defense Counsel Rarely Benefits the Estate</u>.

Almost all courts that have addressed the issue have held that criminal defense counsel does not benefit the estate. *In re Engel*, 124 F.3d 567, 574-76 (3d Cir. 1997); *In re Miell*, 2009 WL 2590515 at *4 (N.D. Iowa); *French*, 139 B.R. at 490; *In re Gherman,* 101 B.R. 367, 368 (Bankr. S.D. Fla. 1989) ("a bankruptcy debtor-in-possession cannot employ and use estate funds to pay

criminal counsel in connection with the defense of criminal charges arising out of prebankruptcy activities"); *In re Spurgeon,* 2008 WL 4372762, at *3 (Bankr. E.D. Tenn.) (no choice but to deny the application to employ criminal defense counsel); *In re Stoecker,* 114 B.R. 965, 970 (Bankr. N.D. Ill. 1990) ("As a general rule, a debtor has no right to use estate assets to fund [a] criminal defense."); *In re Duque*, 48 B.R. 965, 974-75 (S.D. Fla. 1984) (criminal prosecutions for pre-petition activity concern only the debtor personally and not the estate); *Wootton v. Ravkind (In re Dixon)*, 143 B.R. 671, 678 (Bankr. N.D. Tex. 1992) (courts in the Fifth Circuit and elsewhere have generally refused to authorize the use of estate funds for payment of criminal counsel because the expense did not benefit the estate); *Official Committee of Disputed Litigation Creditors v. McDonald Investments, Inc.*, 42 B.R. 981, 986 (N.D. Tex. 1984); *In re Tashof*, 33 B.R. 225, 227 (Bankr. D. Md. 1983); *In re United Church of the Ministers of God*, 84 B.R. 50, 55-56 (Bankr. E.D. Pa. 1988); *cf. In re Warner*, 141 B.R. 762, 764 (M.D. Fla. 1992) (benefit to the estate shown because criminal defense counsel challenged a $22,250,000 fine for which the estate was liable).

In this case, employment of Ms. Sirignano would not benefit the estate. As Debtor has never worked and does not propose to work, incarceration would not deprive the estate of income. Indeed, incarceration likely would benefit to the estate because Debtor's monthly expenses would be reduced.

E. <u>Debtor's Sixth Amendment Rights do not Trump the "Benefit to the Estate" Requirement</u>.

While Debtor all but conceded that granting the application would not benefit the estate, he argues that his Sixth Amendment right to defense counsel supersedes the "benefit to the estate" requirement. The Court rejects this argument for two reasons.

First, Sixth Amendment issues are the concern of the court trying the criminal case, not the bankruptcy court. In *Duque*, the court held:

> [P]otential violations of the debtor's constitutional rights posed by criminal investigations or prosecutions occurring after the filing are of concern to the criminal forum, not the bankruptcy court. No violation of such rights by authorities charged with vindicating public interests through the criminal processes can give the debtor any greater interest in the private rights surrounding the estate being administered by a bankruptcy court.

48 B.R. at 975.

Similarly, in *Wootton v. Ravkind (In re Dixon)*, the court stated:

> Defendant has suggested that even if it was not in the estate's best interest to employ him as criminal counsel, Dixon has a Sixth Amendment right entitling him to spend estate funds on his criminal defense. This argument is without merit. . . . The Sixth Amendment guarantees that Dixon will not be imprisoned after conviction if he has not had the assistance of counsel in his criminal proceeding. This entitles him to court-appointed counsel in the event he is unable to employ counsel. Dixon's Sixth Amendment right does not entitle him to any greater rights in Bankruptcy Court or any greater claims against the bankruptcy estate's assets. Even if Texas courts violated Dixon's Sixth Amendment right to counsel, Dixon's remedy would not be in the Bankruptcy Court—any remedy for a Constitutional violation would have to be brought in state or federal court.

143 B.R. at 679. *See also Spurgeon*, 2008 WL 4372762, at *1 (quoting *Duque*); *French*, 139 B.R. at 490 (quoting *Duque*); *McDonald Investments*, 42 B.R. at 986 (Sixth Amendment argument is "not even superficially plausible"); *In re Rheuban*, 121 B.R. 368, 384 (Bankr. C.D. Cal. 1990) (the Sixth Amendment only guarantees defendants in criminal cases the right to adequate representation, not representation by a particular attorney whom the defendant cannot afford).

Debtor argues that most of the cases cited above were decided before the enactment of BAPCPA,[5] which provided, inter alia, that an individual chapter 11 debtor's post-petition income is property of the estate. *See* § 1115. After BAPCPA, Debtor argues, he would be denied his Sixth Amendment right to defense counsel if he can't use estate funds to pay the lawyer, since he has no

---

[5] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (codified as amended in scattered sections of 11 U.S.C.).

money of his own. This argument has no merit. While it is true that after BAPCPA an individual chapter 11 debtor's post-petition income is estate property, it does not follow that his estate must be burdened with nonbeneficial expenses. Before and after BAPCPA, if a debtor had enough money to pay for criminal defense counsel, he would have to do so, while he otherwise would be entitled to a public defender. BAPCPA might have made it more likely that individual chapter 11 debtors qualify for public defenders, but it did not render the "benefit to the estate" requirement unconstitutional.

> As stated in *Hardy v. United States*:
>
> Indigence 'must be conceived as a relative concept. An impoverished accused is not necessarily one totally devoid of means.' Attorney General's Report, at 8. An accused must be deemed indigent when 'at any stage of the proceedings (his) lack of means . . . substantially inhibits or prevents the proper assertion of a (particular) right or a claim of right.' Ibid. Indigence must be defined with reference to the particular right asserted. Thus, the fact that a defendant may be able to muster enough resources, of his own or of a friend or relative, to obtain bail does not in itself establish his nonindigence for the purpose of purchasing a complete trial transcript or retaining a lawyer.

375 U.S. 277, 289 n.7 (1964). *Hardy* was cited in *McDonald Investments*, 42 B.R. at 987. The *McDonald Investments* court went on to hold:

> Numerous courts have noted that a consideration of the accused's debt situation is appropriate in determining his eligibility for appointed counsel. *See, e.g., In re Smiley,* 66 Cal. 2d 606, 58 Cal. Rptr. 579, 427 P.2d 179, 187–88 (1967); *Connecticut v. Harris,* 5 Conn. Cir. Ct. 313, 250 A.2d 719, 720–21 (1968); *Bolds v. Bennett,* 159 N.W. 2d 425 (Iowa 1968); *Washington ex rel. Brundage v. Eide,* 83 Wash. 2d 676, 521 P.2d 706, 708 (1974). The test, in short, "turn[s] not upon whether an accused ought to be able to employ counsel, but whether he is in fact able to do so." *Ohio v. Tymcio,* 42 Ohio St. 2d 39, 325 N.E.2d 556, 560 (1975).
>
> Thus a Minnesota court determining McDonald's eligibility for appointed counsel would probably take into consideration the unavailability of assets of the bankruptcy estate for funding his criminal defense.
>
> Even assuming, improbably, that McDonald's Sixth Amendment right to counsel will be violated by the Minnesota courts, that gives him no greater rights in the bankruptcy court. His remedy for a constitutional violation must be sought in the state and federal courts of Minnesota.

-9-
Case 17-12274-t11    Doc 983    Filed 10/24/19    Entered 10/24/19 14:11:33 Page 9 of 11

*Id.* (internal footnote omitted). *Duque's* conclusion that "potential violations of the debtor's constitutional rights . . . are of concern to the criminal forum, not the bankruptcy court" remains true after BAPCPA. 48 B.R. at 975.[6]

Second, while Debtor, through his counsel, asserted his inability to qualify for a public defender, he introduced no evidence to support the allegation. Arguments of counsel are no substitute for evidence. *See, e.g., Powell v. COBE Laboratories, Inc.,* 208 F.3d 227 (10th Cir. 2000) (counsel's arguments are not evidence); *Fritzsche v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002) (citing *Powell*). Debtor did not carry his burden of proof on this issue.

### III. CONCLUSION

The proposed employment, which could only be allowed under § 327(a), would not benefit the bankruptcy estate and therefore cannot be approved. If Debtor wishes to pay for his own attorney, he must use non-estate assets at his disposal, if any he has. Otherwise, he must ask the court presiding over the criminal case to appoint an attorney to represent him. The Sixth Amendment, which is the concern of the court presiding over Debtor's criminal trial, does not prevent this Court from limiting the employment of counsel to those who would benefit the estate.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 24, 2019

---

[6] It is worth noting that, to the best of the Court's knowledge and experience, the Federal Public Defender program in New Mexico is excellent, as are its attorneys.

Copies to:    Electronic notice recipients

              Amy Sirignano
              5901j Wyoming Blvd, NE #250
              Albuquerque, NM 87109