UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

VICTOR P. KEARNEY,                                                          No. 17-12274 t11

    Debtor.

## OPINION

On February 28, 2020, the Debtor filed a motion to convert his case to a chapter 7 case. Louis Abruzzo and Benjamin Abruzzo, as trustees of the Mary Pat Abruzzo Kearney Testamentary Trusts B and C (the "Abruzzo Trustees") objected. In their objection the Abruzzo Trustees argued, inter alia, that if the case is converted it should be immediately reconverted to chapter 11. Before the Court is Debtor's motion to strike the objection to conversion and the motion for reconversion because the Abruzzo Trustees lack standing, are not parties in interest entitled to appear and be heard under § 1109,[1] and may not seek affirmative relief under § 706(b).

As set out below, the Court concludes that the Abruzzo Trustees, far from being mere kibitzers in this contested matter, have the strongest economic and other interests in the outcome of the motion and must certainly be allowed to object, argue, present evidence, and otherwise participate. The Court will deny the motion to strike.

I.    FACTS

For the purpose of ruling on the Motion, the Court finds:[2]

Debtor is a life beneficiary of two trusts—the Mary Pat Abruzzo Kearney Testamentary Trusts B and C (the "Trusts"). The Abruzzo Trustees are residual beneficiaries of the Trusts.

---

[1] All statutory references are to 11 U.S.C. unless otherwise noted.
[2] The findings are based in part on taking judicial notice of the docket in this bankruptcy case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket).

In 2013, Debtor sued the Abruzzo Trustees in state court, alleging that they breached their fiduciary duties to him in administering the Trusts. The Abruzzo Trustees filed counterclaims against Debtor for breach of fiduciary duty.[3] Debtor's claims were tried to a jury in 2015, but the state court entered a directed verdict against him. The state court found that the Abruzzo Trustees were the prevailing parties on all issues at trial and awarded the Abruzzo Trustees attorneys' fees and costs pursuant to NMSA 1978, § 46A-10-1004. Debtor subsequently resigned as co-trustee of the Trusts.

In 2017 the state court tried the Abruzzo Trustees' counterclaims and found in favor of, and awarded attorneys' fees to, the Abruzzo Trustees.

Before the final state court hearing, on September 1, 2017, Debtor filed this chapter 11 case. The Abruzzo Trustees and the minor remainder beneficiaries filed proofs of claims based on the attorneys' fees and costs awarded in the state court action, stating that the claims were contingent on whether the state court ruled that the fees and expenses awarded should be paid from the Trusts' gross income. Claims 28-2, 29-1, 30-1, 31-1, 32-1.

The U.S. Trustee in Debtor's bankruptcy case appointed a committee of unsecured creditors (the "UCC") to represent Debtor's unsecured creditors. The UCC proposed a reorganization plan (the "UCC Plan") which was confirmed on February 28, 2019 (the "Confirmation Order"). Docs. 536, 846. Debtor appealed. The appeal currently is before the Tenth Circuit Court of Appeals.

In essence, the UCC Plan is the result of lengthy negotiations among the UCC, the Abruzzo Trustees, and Alvarado Realty Company ("ARCO").[4] Under the proposed deal, ARCO would buy

---

[3] At the time, Debtor was a co-trustee of the Trusts.

[4] The Abruzzos have a major ownership and managerial interest in ARCO. In many ways it is a family business.

from the Abruzzo Trusts all 0f their ARCO stock for $12,571,799. The Trusts would then pay $3,000,000 to the estate in exchange for, inter alia, a release of all estate claims against ARCO, the Trusts, the Abruzzo Trustees, and related parties (the "Abruzzo/ARCO Parties"). The $3,000,000 payment would fund the UCC plan and be used to pay creditors. The state court approved the arrangement after hotly contested litigation.

The UCC Plan provides that the Abruzzo Trustees' claims shall not receive any distributions under the plan." Doc. 536 at 6–7, 32. However, the UCC Plan provides for a broad release of estate claims against the Abruzzo/ARCO parties. Doc. 536 at 32.

After the Court confirmed the plan the Abruzzo Trustees asked the state court to rule that the damages and attorneys' fees awarded to them in the state court litigation were expenses of the Trusts. Doc. 951. On September 10, 2019, the state court granted their request and ordered that "[a]ttorneys' fees and costs awarded by this [c]ourt, or that may be awarded in the future are recoverable Trust expenses and not amounts owed by [Debtor] . . . ." Doc. 951. This ruling may mean that the Abruzzo Trustees do not have claims against the estate.

On February 28, 2020, the Debtor filed his motion to convert his chapter 11 bankruptcy case to a chapter 7 liquidation case pursuant to § 1112(a). Doc. 1030. On March 9, 2020, the Abruzzo Trustees filed their objection. Doc. 1037. The objection asks the Court to deny the motion to convert or, if the Court grants the motion, to immediately reconvert the case back to Chapter 11. Doc. 1037.

## II. DISCUSSION

A. Article III Standing.

Article III of the United States Constitution restricts federal court adjudication to actual cases or controversies. *State of Utah v. Babbitt*, 137 F.3d 1193, 1201 (10th Cir. 1998). To satisfy Article III's standing requirements, a plaintiff must show an injury in fact, causation, and redressability. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Bednar v. RCB Bank, et al.* (*In re Bednar*), No. AP 18-01096, 2019 WL 3928844, at *5 (10th Cir. BAP) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016)).

B. Prudential Standing.

Prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *The Wilderness Soc. v. Kane County, Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011). The prudential standing doctrine encompasses various limitations, including "the general prohibition on a litigant's raising another person's legal rights." *Id*. (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "[T]he plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Prudential standing is an issue of subject matter jurisdiction. *Wilderness Soc.*, 632 F.3d at 1168; *Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 717 F.3d 189, 194 n.4 (D.C. Cir. 2013) (prudential standing is threshold jurisdictional concept).

C.  Statutory Standing.

Sometimes the right to bring a cause of action is conferred by statute. In those cases, prudential standing concepts, which are judge-made, take a back seat. *See, e.g., Lexmark Intern. Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387-88 (2014) ("[W]e do not ask whether in our judgment Congress should have authorized [plaintiff's] suit, but whether Congress in fact did so.").

D.  The Abruzzo Trustees have Standing to Object to Debtor's Motion to Convert.

The Abruzzo Trustee clearly have standing to object to the motion to convert. First, Section 1109(b) provides:

> [a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

Section 1109(b)'s enumerated list of parties that may object is not exhaustive, *Vermejo Park Corp. v. Kaiser Coal Corp., et al.* (*In re Kaiser Steel Corp.*), 998 F.2d 783, 788 (10th Cir. 1993), and the term "party in interest" is "generally given a broad though not 'infinitely expansive' construction." *In re Sandia Tobacco Manufacturers, Inc.*, No. 16-12335-J11, 2019 WL 4307561, at *4-5 (Bankr. D.N.M. July 27, 2019) (quoting *Southern Blvd, Inc. v. Martin Paint Stores* (*In re Martin Paint Stores*), 207 B.R. 57, 61 (S.D.N.Y. 1997)). The Court considers whether a party is a party in interest on a case by case basis. *Sandia Tobacco Manufacturers, Inc.,* 2019 WL 4307561, at *4. A party is a party in interest if it "has a sufficient stake in the proceeding so as to require representation." *Id.* (quoting *Kaiser Steel,* 998 F.2d at 788). Generally, if the bankruptcy proceedings will have a direct effect on a party's pecuniary or legally protected interests, the party has standing under § 1109(b). *See Nintendo Company, Ltd. v. Patten* (*In re Alpex Computer Corp.*), 71 F.3d 353, 356 (10th Cir. 1995) (stating that the term "party in interest" "is generally understood to include all persons whose pecuniary interests are, directly affected by the bankruptcy

-5-

proceedings") (quoting *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 5 F.3d 750, 756 (4th Cir.1993)); *In re Campbellton-Graceville Hosp. Corp.* (*Campbellton*), 593 B.R. 663, 667 (Bankr. N.D. Fla. 2018) ("To establish standing to object to confirmation, a party in interest under 11 U.S.C.§ 1109(b) must possess a legally protected interest affected by confirmation.").

Here, the Abruzzo Trustees argue that they "have a significant interest in the UCC Plan and any conversion of the case that would render the UCC Plan moot" because "[t]he [Abruzzo] Trustees are receiving releases [through the UCC Plan]." Doc. 1037. Citing *Campbellton*, Debtor argues in response that the Abruzzo Trustees' interest in the releases contained in the UCC Plan is not a legally protected or pecuniary interest. Doc. 1043.

In *Campbellton*, the objecting party's "only role . . . was as a potential target of future litigation by the [d]ebtor, [c]ommittee, creditors and/or a liquidating trustee . . . ." 593 B.R. at 669. The court held that the objecting party was not a party in interest where the potential for litigation against it did "not depend on the outcome of this Chapter 11 case" and the objecting party could be sued "irrespective of whether or not this Chapter 11 case proceeds, the plan is confirmed, or the case is dismissed." *Campbellton*, 593 B.R. at 669.

In contrast, conversion of this case would have a direct effect on whether Debtor may sue the Abruzzo Trustees for certain causes of action. The UCC Plan precludes "all Causes of Action, as defined [in the UCC Plan], with Debtor fully, finally, and forever waiving relinquishing, releasing and discharging all such Causes of Action." Doc. 536 pg. 32. As defined, "Causes of Action" includes "any and all rights, claims, demands, and causes and rights of action of the Debtor, direct or indirect, derivative or non-derivative, that were, could have been, or have been or could at any time in the future be alleged as to the Abruzzo/ARCO Parties or the MPK Trust"

as well as claims related the state court litigation.[5] Doc. 536, pg. 13. The UCC Plan is binding and enforceable. *See Landrum v. Otero Cty. Hosp. Ass'n, Inc.* (*In re Otero Cty. Hosp. Ass'n, Inc.*), 551 B.R. 463, 476 (Bankr. D.N.M. 2016); 11 U.S.C. § 1141(a); Doc. 526, pg. 37. The Abruzzo Trustees therefore have a legally protected interest in the releases.

The Abruzzo Trustees have spent an enormous amount of time, energy, and money dealing with this chapter 11 case, the UCC, and the Debtor. The Abruzzo Trustees negotiated the terms of the UCC Plan and obtained the necessary approvals from this Court and the state court. Given the history of the Debtor and the Abruzzo Trustees since the state court litigation began in 2013, it is ludicrous to contend that the Abruzzo Trustees are not parties in interest in the Debtor's effort to undo all of their work by converting the case to chapter 7. Other than (perhaps) the Debtor himself, no party is more interested in the outcome of this chapter 11 case than the Abruzzo Trustees. They

---

[5] The UCC Plan provides: "'Causes of Action' means any and all rights, claims, demands, and causes and rights of action of the Debtor, direct or indirect, derivative or non-derivative, that were, could have been, or have been or could at any time in the future be alleged as to the Abruzzo/ARCO Parties or the MPK Trust, including but not limited to any and all claims for breach of fiduciary duty, shareholder oppression, fraud, misrepresentation, misappropriation of corporate opportunity, breach of trust, corporate wrongdoing, past due income or dividends, and all claims for any liabilities, losses, debts, obligations, promises, agreements, compensation, reimbursement, fines, penalties, equitable relief, legal relief, damages (including without limitation nominal, actual, and compensatory, punitive or exemplary damages) attorneys' fees, costs, court costs, interest, and expenses of any type nature and kind whatsoever, whether known or unknown, fixed or contingent, accrued or not yet accrued, suspected or not suspected, as well as Adv. No. 18-01031t and Avoidance Actions, that exist or may have existed as of the Effective Date, including, without limitation, any related to any of the Abruzzo/ARCO Parties, the State Court Litigation, including any appeal therefrom, any such rights, claims, causes of action, suits, and proceedings that the Debtor may have as debtor and debtor-in-possession (exercising the rights and powers of a trustee pursuant to § 1107(a) of the Bankruptcy Code), whether or not brought by or on behalf of the Debtor and/or the Estate, and/or any Holder of any Claim, including Adv. No. 18-01031t , any and all claims that the Debtor may have as a debtor or debtor-in-possession under § 541 of the Bankruptcy Code, (exercising the rights and powers of a trustee pursuant to § 1107(a) of the Bankruptcy Code), and including any and all claims that the Debtor may have as a debtor and debtor-in-possession (exercising the rights and powers of a trustee pursuant to § 1107(a) of the Bankruptcy Code), and §§ 502 through 510, 522, and 544 through 553 (inclusive) of the Bankruptcy Code." Doc. 536, pg. 13.

have spent millions of dollars and seven years defending against claims brought by the Debtor. The Debtor has made it very clear that he wants to bring new claims against the Abruzzo Trustees if only he is allowed to do so.

The motion to convert raises the specter that all of time, money, and effort the Abruzzo Trustee devoted to the UCC Plan will be undone, and that they would once again face years of litigation brought by the Debtor. This possibility gives the Abruzzo Trustees Article III and statutory standing to object to Debtor's motion to convert.

E. The Abruzzo Trustees Have Standing to Move for Reconversion to Chapter 11 Under § 706(b).

In their objection to Debtor's motion to convert, the Abruzzo Trustees asks that, should the Court grant the motion to convert, the Court should immediately re-convert the case to a case under chapter 11 pursuant to § 706(b). Doc. 1037, pg. 9. Section 706(b) provides that, "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time."

Debtor argues that, even if the Abruzzo Trustees are parties in interest eligible to object to his motion to convert, the Abruzzo Trustees do not have standing "to seek affirmative relief under § 706(b)" because the Abruzzo Trustees do not fall within the scope of "persons whom the statute is intended to protect." Doc. 1043. The Court disagrees. "Parties in interest" are the very entities § 706(b) protects: "These decisions to convert are within the discretionary powers of the bankruptcy court based on the court's determination of what will most inure to the benefit of all parties in interest." *Texas Extrusion Corp. v. Lockheed Corp., et al.* (*Matter of Texas Extrusion Corp.*), 844 F.2d 1142, 1161 (5th Cir. 1988) (emphasis added) (quoting H.R. Rep. No. 595, 95 Cong., 1st Sess. at 380 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News at 6336); *see*

*Proudfoot Consulting Company v. Gordon* (*In re Gordon*), 465 B.R. 683, 692 (Bankr. N.D. Ga. 2012). It makes no sense that the Abruzzo Trustees could be parties in interest to object to the motion to convert but not be parties in interest with standing to move to reconvert. They are two sides of the same coin. It does not pass the straight-face test to argue that they have standing for one but not the other.

The Court concludes that the Abruzzo Trustees have Article III and statutory standing to file a motion to reconvert.

### III. CONCLUSION

The Abruzzo Trustees have a legally protected interest in the UCC Plan that would be directly affected if Debtor's case were converted to chapter 7 and not immediately reconverted. They have been as involved in this bankruptcy case as any other party. The economic and other interests of the Abruzzo Trustees would be profoundly affected by conversion. Thus, the trustees clearly have standing under § 706(b) to oppose conversion, propose immediate reconversion, and fully litigate both contested matters and protect their interests. By separate order, the Court will deny the motion to strike.

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 20, 2020

Copies to: Electronic notice recipients