UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

VICTOR P. KEARNEY,                                              No. 17-12274 t11

    Debtor.

## OPINION

    Before the Court is the debtor's ex-wife's motion to dismiss this case because debtor has not paid post-petition child support as required by their marital settlement agreement. The unsecured creditors' committee ("UCC") and a substantial party in interest oppose the motion. The Court concludes that the ex-wife did not carry her burden of proving cause for dismissal; that unusual circumstances prevent dismissal in any event; and that the doctrine of laches was properly invoked by the objecting parties. For these reasons, the motion will be denied. The Court will give the ex-wife an opportunity, however, to prove her claim to a post-petition arrearage, and will enter an appropriate order upon making the required findings of fact on that issue.

### I.    FACTS[1]

    Debtor married Mary Pat Abruzzo in 1988. She died in 1997. Under her will, Debtor is a life beneficiary of two trusts—the Mary Pat Abruzzo Kearney Testamentary Trusts B and C (the "Trusts"). The Trusts hold stock in the Abruzzo family business, Alvarado Realty Company ("ARCO"). ARCO is managed by Debtor's brothers-in-law, Louis and Benjamin Abruzzo, who

---

[1] The Court took judicial notice of the docket in the main case and the State Court Action (defined below). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

are the trustees of the Trusts.[2] Since 1997 Debtor has received disbursements of about $16,000,000 from the Trusts. Before he filed this case, Debtor was receiving about $800,000 a year from the Trusts. Debtor lives off of the Trusts' income. To the Court's knowledge, Debtor has not worked since he married Mary Pat.

In 2013 Debtor filed suit in New Mexico state court against Louis and Benjamin Abruzzo as trustees, alleging breaches of their fiduciary duties (the "State Court Action").[3] The Abruzzos as trustees counterclaimed. In general terms, Debtor lost his case in rather spectacular fashion, while the Trusts prevailed in their claims. The Trusts incurred at least $1,200,000 in attorney fees and costs in the State Court Action, which they are entitled to charge against trust income that otherwise would be payable to Debtor.

On September 13, 2013, Debtor married Michelle Daskalos. They have two children. The marriage was short-lived; Debtor and Daskalos separated on August 1, 2015, and Daskalos filed for divorce three months later.[4] On November 18, 2015, the state court entered a negotiated Marital Settlement Agreement and Parenting Plan (the "MSA"). The MSA states in part that "[t]he Parties agree that [Debtor] will pay [Daskalos] fourteen thousand seven hundred and fifty-eight dollars ($14,758.00) a month for his child support obligation."[5] This obligation forms the basis of Daskalos' claim against Debtor.

---

[2] Debtor was also a trustee of the Trusts until he resigned in 2016.
[3] Second Judicial District Court, State of New Mexico, case no. D-202-CV-2013-07676.
[4] Second Judicial District Court, State of New Mexico, case no. D-202-DM-2015-03990.
[5] Under New Mexico's Basic Child Support Schedule, a parent making $30,000 a month need only pay $4,327 per month to support two children. N.M.S.A. § 40-4-11.1. If the monthly gross income is $17,500 (see below), the child support amount is $2,584.

Debtor filed this chapter 11 case on September 1, 2017. Debtor has filed Monthly Operating Reports ("MOR") every month from September 2017 through March 2020. The reports show the following child support payments:

| Month | Child support Payment | Month | Child support Payment |
|---|---|---|---|
| September 2017 | $14,873 | January 2019 | $14,783 |
| October 2017 | $14,758 | February 2019 | $14,873 |
| November 2017 | $14,873 | March 2019 | $14,500 |
| December 2017 | $14,785 | April 2019 | $12,000 |
| January 2018 | $14,785 | May 2019 | $14,800 |
| February 2018 | $14,785 | June 2019 | $14,750 |
| March 2018 | $14,758 | July 2019 | $14,750 |
| April 2018 | $6,000 | August 2019 | $7,750 |
| May 2018 | $6,000 | September 2019 | $7,000 |
| June 2018 | $6,000 | October 2019 | $9,000 |
| July 2018 | $6,000 | November 2019 | $7,000 |
| August 2018 | $2,500 | December 2019 | $5,000 |
| September 2018 | $9,500 | January 2020 | $6,000 |
| October 2018 | $6,000 | February 2020 | $7,500 |
| November 2018 | $6,000 | March 2020 | $6,700 |
| December 2018 | $60,306 | | |

Debtor filed seven chapter 11 plans between April 2, 2018 and January 22, 2019, none of which made it to a confirmation hearing.[6] The first plan provided:

> the Plan approves an agreement between the Debtor and his ex-wife, Michelle Daskalos, to modify the Debtor's current obligations owed to Ms. Daskalos for support, alimony, or child support to $6,000.00 per month.

The Court denied Debtor's motion to further extend exclusivity in May 2018. Debtor filed an amended plan shortly thereafter. It and all subsequent Debtor plans contained the following language immediately after the language quoted above:

> If (a) this Plan is not approved, (b) a trustee is appointed (either chapter 7 or chapter 11), (c) this Bankruptcy Case is dismissed, or (d) this Bankruptcy Case is converted to a case under chapter 7 of the Bankruptcy Code, then this agreement with Ms. Daskalos shall be null and void.

---

[6] The centerpiece of all Debtor's proposed plans was to bring new claims against the Abruzzos, ARCO, and related entities.

The UCC filed a creditor plan of reorganization on July 12, 2018. On November 14, 2018, the UCC filed a motion to compel Debtor to make payments to UCC's counsel for attorney fees incurred in the case. The motion alleged that Debtor had not paid UCC's counsel since paying an initial $15,000 retainer, and that Debtor had $76,111.12 in cash in the bank available to pay professional fees.

The Court set a preliminary hearing on the UCC's motion for December 6, 2018. Apparently in response to the threat that he might be forced to pay professional fees, Debtor paid Daskalos $51,306 on November 26, 2018, and an additional $9,000 on December 3, 2018. These payments emptied Debtor's bank account. The payments were contrary to Debtor's alleged agreement with Daskalos to reduce the monthly child support payments to $6,000.

Between November 2018 and January 2019, Debtor and the UCC had competing plans of reorganization under consideration by the Court and creditors. Daskalos filed a limited objection to Debtor's plan, which stated in part:

> In connection with the Debtor Plan only, Ms. Daskalos recognizes the proposal of the Debtor to make payment of $6,000.00 on a monthly basis in accordance with a Budget attached to the Debtor Plan as Exhibit A (the "Budget"). Ms. Daskalos does not agree to a modification of her Domestic Support Obligation, but has agreed to accept this level of monthly payments upon confirmation, with the reservation that the current Domestic Support Obligation remain in place and that she retain the right to compel catch up of the accrued difference in the future.

This recitation of the agreement between Debtor and Daskalos is significantly different than the versions Debtor presented in his proposed plans.

On February 28, 2019, over the objections of Debtor and Daskalos, the Court confirmed the UCC's amended plan of reorganization. The UCC plan provides that Debtor will pay child support from his post-petition income. Once consummated, the UCC Plan will discharge Debtor's

pre-petition debts and leave him much better able to pay child support. Debtor appealed the confirmation order.

On September 6, 2019, the judge in the State Court Action reduced Debtor's trust distributions to $17,500 per month, after tax, so the Trusts could recoup the $1,200,000 in attorney fees and costs they spent defending the State Court Action.

After July 2019, Debtor reduced his monthly child support payments to about $7,000 a month.

On December 4, 2019, the Tenth Circuit Bankruptcy Appellate Panel affirmed the confirmation order. Debtor has appealed to the Tenth Circuit. The UCC plan has not been substantially consummated because the UCC and the Abruzzos decided to await the outcome of the appeals.

Debtor filed a motion to convert the case to chapter 7 on February 28, 2020. His ground for conversion is that he wants the ability to pay criminal defense counsel of his choosing, which he is unable to do in chapter 11.[7]

Daskalos filed her motion to dismiss on March 3, 2020. She submitted an affidavit in support of the motion, which purports to summarize all post-petition child support payments she has received and a running balance of unpaid payment arrearages. Daskalos also filed a joinder in Debtor's motion to convert.

Daskalos did not present any evidence in support of her motion at the final hearing, held April 9, 2020. Thus, the only evidence is the dockets in this case and the State Court Action.

---

[7]Debtor was indicted on August 27, 2019 for conspiracy to defraud the United States Internal Revenue Service and for filing a willfully false income tax return. On October 24, 2019, the Court denied Debtor's application to employ criminal defense counsel, ruling that the proposed employment would not benefit the estate.

## II. DISCUSSION

A. Section 1112(b) Dismissal/Conversion Standard.

Section 1112(b)[8] provides in part:

(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
(2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that--
    (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
    (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
        (i) for which there exists a reasonable justification for the act or omission; and
        (ii) that will be cured within a reasonable period of time fixed by the court.

"Cause" includes the "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." Section 1112(b)(4)(P).

"The code does not define 'unusual circumstances' within the meaning of 11 U.S.C. § 1112(b)." *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 148 (Bankr. D.N.M. 2008), citing *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007); *see also In re Fisher*, 2008 WL 1775123, at *5 (Bankr. D. Mont.) (same). In *Orbit* the Court, citing Colliers, concluded that where "unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding," the case should not be dismissed

---

[8] All references are to 11 U.S.C. unless otherwise indicated.

or converted. *Id*. at 148–49 (citation omitted) (payment of all creditors in full on the effective date of the chapter 11 plan constituted unusual facts or circumstances).

Thus, if a movant proves that "cause" exists to dismiss or convert a case due to an act or omission of the debtor, a party opposing the dismissal or conversion must prove:

- There are "unusual circumstances" such that conversion or dismissal is not in the best interests of creditors;
- If there are substantial or continuing losses to the estate, there is a reasonable likelihood of rehabilitation;
- There is a reasonable likelihood that a plan will be confirmed within a reasonable time;
- There is a reasonable justification for the "cause;" and
- The "cause" can be cured within a reasonable time fixed by the court.

The burden of proof is on the movant to show by a preponderance that cause exists. *In re Labankoff*, 2010 WL 6259969, at *3 (9th Cir. BAP), citing *In re Pittsfield Weaving Co.*, 393 B.R. 271, 274 (Bankr. D.N.H. 2008). Failure to pay *any* domestic support obligation establishes cause under § 1112(b)(4)(P). *In re Guzman*, 2018 WL 3032862, at *7 (Bankr. D.P.R.); cf. *In re Odom*, 2015 WL 3749828, at *6–7 (Bankr. D.S.C.) (the court gave the debtor a week to get current on his past due alimony payment).

If a movant asks for dismissal over conversion, or vice versa, it has the additional burden of demonstrating that the particular relief requested "is in the best interest of creditors and the estate." *In re Rosenblum*, 609 B.R. 854, 863 (Bankr. D. Nev. 2019) (citing 7 Collier on Bankruptcy ¶ 1112.04[4] at n.35 and associated text); *see also In re Helmers*, 361 B.R. 190, 198 (Bankr. D. Kan. 2007) (U.S. Trustee's office, which filed a § 1112(b) motion, did not carry its burden of showing that conversion would be better than dismissal).

B. <u>Daskalos Did Not Establish "Cause" under § 1112(b)(4)(P).</u>

In her motion to dismiss, Daskalos alleges that Debtor owes more than $72,700 in post-petition child support. She did not present any evidence in support of this allegation at the final

-7-
Case 17-12274-t11    Doc 1071    Filed 05/13/20    Entered 05/13/20 17:08:33 Page 7 of 13

hearing. The affidavit she submitted with the motion cannot be considered at an evidentiary hearing. As it was her burden to prove cause, *Labankoff*, 2010 WL 6259969, at *3, the motion will be denied for a failure of proof.

This is not simply a quibble about evidence or burden of proof. Clearly, Daskalos and Debtor have, or had, an agreement to reduce Debtor's monthly child support payment from $14,758 to $6,000. If the agreement is still binding, then Debtor has overpaid Daskalos by more than $120,000. If the agreement was binding after March 2018 but terminated in March 2019 (after the UCC plan was confirmed), Debtor would still have overpaid Daskalos by about $7,000 through March 2020. It is only if the agreement was retroactively void *ab initio* that Debtor ends up with a substantial arrearage.

The only evidence in the record is that there are three versions of the agreement, each contradicting the other two. Daskalos had the burden of introducing some evidence that her version is the right one. She did not do so.

C.  The "Unusual Circumstances" Exception to Conversion or Dismissal Has Been Established.

Even if Daskalos had proven cause under § 1112(b)(4)(P), the "unusual circumstances" exception dictates that the case may not be dismissed or converted.

1. Unusual Circumstances. A number of unusual circumstances establish that this case should not be converted or dismissed. First, there is a confirmed creditor plan of reorganization in this case, awaiting only Tenth Circuit approval before being consummated. The plan is the creditors' best chance to get paid a portion of their claims.

Second, Daskalos would not benefit from conversion or dismissal. If the Court granted her motion, she would have to compete with many other creditors, and Debtor's criminal defense

counsel, for payment. In contrast, the UCC Plan gives Daskalos the ability to collect child support from Debtor. Upon substantial consummation, millions of dollars of Debtor's debts will be discharged, making it much easier for Debtor to pay child support.

Third, if the case were dismissed, Debtor would be free to sue the Abruzzos and ARCO again, putting his monthly trust disbursements at risk of further reduction. His efforts during the first round of litigation resulted only in the Abruzzo Trusts offsetting income he otherwise would receive by $1,200,000 in attorney fees and costs. Further litigation might conceivably help creditors, but more likely would harm them, and Daskalos, substantially.

Fourth, Debtor should have reduced his child support obligation long ago. Indeed, it appears he did just that with the $6,000 a month agreement, which, although still much higher than the state guidelines for his current income, is less than half the original monthly amount. Had Debtor's plan been confirmed, there is no doubt he would be paying Daskalos $6,000 a month, with no complaint from her. Because the UCC plan was confirmed, Debtor apparently decided it was in his interest to jettison the $6,000 a month deal and make no other attempt to reduce the crushing, wildly inflated child support obligation. The decision gave Daskalos grounds to file a motion to dismiss. There is no legitimate reason for Debtor's refusal to lower his child support payment to match his reduced income.

Finally, the timing suggests that, instead of seeking to maximize her recovery, Daskalos filed the motion to aid Debtor in his relentless quest to torpedo the UCC Plan. That is unusual.

The unusual circumstances of this case establish that converting or dismissing the case is not in the best interests of creditors and the estate.

2. <u>Reasonable Likelihood of Rehabilitation</u>. While the estate has suffered continuing loss and diminution,[9] there is a strong likelihood of rehabilitation. The UCC plan was confirmed in February 2019. The confirmation order was affirmed by the Tenth Circuit Bankruptcy Appellate Panel in December 2019. If the Tenth Circuit affirms, the Debtor will be rehabilitated.

3. <u>Reasonable Likelihood a Plan Will be Confirmed Within a Reasonable Time</u>. A plan has been confirmed. This requirement therefore is satisfied.[10]

4. <u>Reasonable Justification for the "Cause."</u> Debtor can only be in default of his child support obligations if the monthly amount is and has always been $14,758. In that event, his failure to pay is reasonably justified. After the state court judge limited Debtor's monthly trust distribution to $17,500, he could no longer afford to pay $15,000 a month in child support.

5. <u>The "Cause" Can be Cured Within a Reasonable Time</u>. The current record does not make clear how much, if any, Debtor owes Daskalos for post-petition child support. If Daskalos wishes to pursue collection of any claimed arrearage, the Court will allow her to present evidence of what she is owed. The evidence should include her sworn testimony at a final hearing and all contracts, emails, letters, text messages, and other evidence of the agreement modifying the monthly child support obligation. The Court also will allow Debtor, the UCC, and the Abruzzos to participate in the hearing, take discovery, subpoena witnesses (including Debtor if necessary), and examine witnesses. The Court will then make findings about any arrearage. If the Court finds

---

[9] Debtor spends all the money he gets from the Trusts, makes no money of his own, and does not pay his professional fees. For example, Debtor's bankruptcy counsel has charged him more than $2 million in this case through September 30, 2019. Debtor has paid almost none of the amounts billed.

[10] The "unusual circumstances" exception is a little hard to apply if the "cause" accrues post-confirmation because the requirement that there be a "reasonable likelihood that a plan will be confirmed . . .within a reasonable time" is anachronistic. The Court concludes that the requirement is automatically satisfied where the alleged cause accrues post-confirmation.

that there is an arrearage, the Court will require payments in an amount sufficient to cure the arrearage in a reasonable time.

D. <u>The Motion is Barred by Laches</u>.

"Although section 1112(b) places no time limitations on the filing of a motion to dismiss, a bankruptcy court may exercise its discretion to deny a motion to dismiss as untimely based on the doctrine of laches." *In re Energy Future Holdings Corp.*, 561 B.R. 630, 645 (Bankr. D. Del. 2016), citing *In re Mirant Corp.*, 2005 WL 2148362, at *11 (Bankr. N.D. Tex.); *see also Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.)*, 857 F.2d 1061, 1063 (5th Cir. 1988) (laches barred shareholder's motion to dismiss because she waited more than a year to file it); *In re Shea & Gould*, 214 B.R. 739, 749 (Bankr. S.D.N.Y. 1997) (citing *Atlas*); *In re I.D. Craig Serv. Corp.*, 118 B.R. 335, 338 (Bankr. W.D. Pa. 1990) (motion to dismiss for lack of authority to file the case denied because the motion was filed more than a year after the petition date).

"For laches to apply, the following factors must be shown: '(1) delay in assertion of a claim; (2) the delay is inexcusable; and (3) undue prejudice results from the delay.'" *Energy Future Holdings*, 561 B.R. at 645, quoting *Mirant*, 2005 WL 2148362, at *11.

1. <u>Delay</u>. According to Daskalos, Debtor fell behind in payments to her in 2018.[11] Despite that, she delayed in filing her motion to dismiss until March 3, 2020.

2. <u>Inexcusable</u>. Daskalos has never said why she waited so long to file the motion. She has known about the bankruptcy case since it was filed. Had she been genuinely concerned about Debtor's alleged failure to pay child support, she could have filed a motion to dismiss in the early part of 2019. There is no legitimate excuse for Daskalos waiting until March 2020 to file the

---

[11] Under Daskalos' theory, Debtor fell behind as soon as he started paying $6,000 a month. That was in April 2018.

motion. There may be an illegitimate excuse for the delay, which both the UCC and the Abruzzos assert, i.e., that Daskalos waited until Debtor lost his Bankruptcy Appellate Panel appeal, then filed her motion in an effort to scuttle the UCC Plan. If this was indeed Daskalos' motive, it would be truly inexcusable. Section § 1112(b) was never intended to give creditors the right to overrule plan confirmation orders.

       3.    <u>Undue Prejudice</u>. Daskalos' delay prejudiced creditors. Had Daskalos filed an § 1112(b) motion in early 2019, Debtor would have had enough money on hand to cure any legitimate arrearage. In addition, the Court could have appointed a chapter 11 trustee to take over Debtor's spending and ensure payment of child support.[12] Daskalos took no action while the UCC worked on its creditor plan. Negotiating, drafting, and obtaining confirmation of the UCC plan took a tremendous amount of time and money. Litigating the appeal has taken more. Daskalos' decision to sit on her rights while the UCC worked on its plan and defended confirmation on appeal prejudiced the UCC and creditors generally. *See, e.g., Energy Future Holdings*, 561 B.R. at 646 (finding prejudice, the court stated: "dismissal of these cases could 'dismantle' the entire…reorganization and significantly reduce recoveries for all…claimants."). Daskalos was aware of how active this case has been from the beginning. If she thought she had the legal right to hit "cancel" by filing an § 1112(b) motion, she had the obligation to do so promptly. Her decision to wait until March 2020 smacks of bad faith. Granting the motion would prejudice other creditors substantially.

---

[12]Now it is too late. *See* § 1104(a) (At any time after the commencement of the case but before confirmation of a plan . . . .").

-12-
Case 17-12274-t11    Doc 1071    Filed 05/13/20    Entered 05/13/20 17:08:33 Page 12 of 13

III. <u>CONCLUSION</u>

Daskalos did not carry her burden of showing cause under § 1112(b) to dismiss or convert this case. In any event, unusual circumstances dictate that the case may not be dismissed or converted. The equitable doctrine of laches requires the same result; Daskalos cannot be permitted to "lie in the weeds" for a year and then demand that the work of the UCC and the Abruzzos be undone. By separate order, the Court will deny the motion but allow Daskalos the opportunity to prove the alleged child support arrearage, so the Court may enter an order providing for a cure within a reasonable time.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 13, 2020
Copies to: counsel of record