UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

VICTOR P. KEARNEY,  No. 17-12274 t11

　　　　Debtor.

**OPINION**

Debtor has moved to convert his individual chapter 11 case, with a confirmed creditor plan of reorganization currently on appeal, to chapter 7. Debtor argues he has an absolute right to convert, but also that conversion is necessary so he can pay his chosen criminal defense counsel to defend him in a tax fraud case. The unsecured creditors' committee and two other interested parties oppose conversion, arguing that Debtor has no absolute right to convert, that conversion would take away the only realistic chance to pay creditors, and that the real reason for conversion is to evade the confirmed creditor plan. After considering the facts and the parties written and oral arguments, the Court concludes that the motion to convert should be denied.

　　　　　　　　　　I.　　FACTS.

The Court finds:[1]

---

[1] The Court took judicial notice of the docket in the main case, a pending state court action involving Debtor and the trustees of his trusts, and the pending federal criminal proceeding against Debtor. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

Debtor filed this chapter 11 case in September 2017. The histories of this case and a state court action involving Debtor[2] have been discussed in the Court's previous opinions and will be mentioned here only as needed to understand the Court's reasoning and ruling.[3]

Pursuant to his deceased wife's will, Debtor is a life beneficiary of two trusts—the Mary Pat Abruzzo Kearney Testamentary Trusts B and C (the "Trusts"). The Trusts hold stock in the Abruzzo family business, Alvarado Realty Company ("ARCO"). ARCO is managed by Debtor's brothers-in-law, Louis and Benjamin Abruzzo, who are also the trustees of the Trusts. Since 1997 Debtor has received disbursements of about $16,000,000 from the Trusts, all generated by ARCO's successful business ventures.

The will creating the Trusts included a spendthrift clause protecting the corpus of the Trusts from Debtor's creditors. Because of the spendthrift clause, Debtor's interest in the Trusts is not property of the bankruptcy estate, nor would it become part of a chapter 7 bankruptcy estate in the event of conversion. *See* § 541(c)(2)[4] ("A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."); 5 Collier on Bankruptcy, ¶ 541.27 (§ 541(c)(2) "excludes the interest of the debtor-beneficiary in spendthrift trusts from property of the estate").

Within a few months of Debtor's bankruptcy filing, the United States Trustee's office appointed an unsecured creditors' committee ("UCC"). After lengthy negotiations and legal maneuvering, including several versions of Debtor's proposed plan of reorganization (none of which garnered creditor support), the UCC filed a competing plan of reorganization (the "UCC

---

[2] *Victor Kearney v. Louis Abruzzo, et. al.*, No. D-202-CV-201307676, pending in the Second Judicial District Court, State of New Mexico. Judge Alan Malott is the presiding judge.
[3] The Cour incorporates by reference its findings in the other opinions entered in this case.
[4] Unless otherwise indicated all statutory references are to Title 11 of the United States Code.

Plan"). Among other things, the UCC Plan provided that the trustees would sell the ARCO stock back to ARCO for about $12,000,000 and would pay $3,000,000 to the bankruptcy estate in exchange for releases of claims against the Trusts, the trustees, ARCO, and related parties. The UCC Plan was contingent on the state court approving trust modifications necessary to complete the transaction contemplated under the plan.[5] Debtor strongly opposed the UCC Plan and attempted to block it in every way he and his lawyers could think of.

Judge Malott approved the proposed trust modifications and the ARCO share buyback on October 31, 2018, after Debtor's questionable and fruitless attempts to remove the case from his jurisdiction. Debtor has appealed Judge Malott's ruling. The appeal is pending. After Judge Malott's ruling, the Court held a hearing on confirmation of the UCC Plan.

The Court confirmed the UCC Plan on February 28, 2019. Debtor appealed the confirmation order to the Tenth Circuit Bankruptcy Appellate Panel ("BAP"). The BAP affirmed on December 4, 2019. Debtor then appealed to the Tenth Circuit Court of Appeals, which appeal is pending. The UCC Plan will not be substantially consummated until the appeal has been decided.

In August 2019, the United States indicted Debtor, charging him with conspiring to commit fraud on the IRS and making and subscribing false income tax returns. The indictment was not a surprise. In an April 2017 letter to the IRS and the New Mexico Taxation and Revenue Department, Judge Malott stated that evidence taken during an April 2017 trial showed that Debtor: had not properly reported his income for many years, had unilaterally altered tax forms issued to him by third parties, and had not filed required tax returns in multiple years. Judge Malott relied on the testimony of the Abruzzos' expert witness in forensic accounting, who called Debtor's tax

---

[5] This provision goes hand-in-hand with a state-court ruling allowing modification of the Trusts, as discussed at length in this Court's Opinion confirming the UCC Plan, doc. 845.

situation a "tax abomination." Judge Malott also found that Debtor lied under oath in testifying about his taxes. It appears from the state court record that Debtor may have fraudulently avoided tax liability on about $7 million of income.

On September 27, 2019, Debtor filed an application to retain Amy Sirignano as his criminal defense counsel. The UCC objected, arguing that the retention would not benefit his estate. The Court denied the application on October 24, 2019.

Five months later Debtor filed the motion to convert, arguing that only by conversion could he afford to pay Ms. Sirignano. The UCC and other interested parties (including the trustees) objected. They argue that the motion is made in bad faith and should be denied for that reason. They assert that paying Ms. Sirignano is only a pretext; that Debtor's real reason for seeking conversion is to evade the confirmed UCC Plan. In the alternative, they argue that if the motion must be granted, the case should be immediately reconverted to chapter 11.

The Court held a final hearing on the motion to convert on March 23, 2020. The only evidence taken at the final hearing showed that Debtor had retained Ms. Sirignano on January 7, 2020, and that Ms. Sirignano has been active in defending Debtor in the criminal case since then. The Court has no evidence showing whether, how, and how much Ms. Sirignano is getting paid, nor is there any evidence that she is concerned about or unhappy with her compensation arrangements with Debtor.

II. DISCUSSION

A. A Chapter 11 Debtor's Right to Convert to Chapter 7.

§ 1112(a) provides:

The debtor may convert a case under this chapter to a case under chapter 7 of this title unless—
    (1) the debtor is not a debtor in possession;

(2) the case originally was commenced as an involuntary case under this chapter; or
(3) the case was converted to a case under this chapter other than on the debtor's request.

1. <u>Debtor's "Absolute Right" Argument</u>. Noting that none of the enumerated exceptions apply, Debtor argues he has the "absolute" right to convert his case to chapter 7. There is some case law and other authority for this position. *See, e.g.*, *Abbott v. Blackwelder Furniture Co. of Statesville, Inc.*, 33 B.R. 399, 401 (W.D.N.C. 1983) ("Congress provided the Chapter 11 debtor with the absolute right to accomplish voluntary conversion to a Chapter 7 liquidation without Court approval"); *In re Schuler*, 119 B.R. 191, 192 (Bankr. W.D. Mo. 1990) (quoting "absolute right" language from a previous version of Collier on Bankruptcy); *see also* 7 Collier on Bankruptcy ¶ 1112.02 (16th ed.) ("Section 1112(a) appears to give the debtor an absolute right to convert a chapter 11 case to as case under chapter 7, provided that none of three limited exceptions apply" (footnotes omitted)).

2. <u>Exceptions to the "Absolute right" of a Debtor to Convert</u>. Nevertheless, Debtor's "absolute right" position is overstated. There are least two exceptions to the "absolute" conversion right.

    a. <u>The Bad Faith Exception</u>. The main exception is the bad faith exception. In 2007 the Supreme Court addressed whether § 706(a) gave a chapter 7 debtor the absolute right to convert his case to chapter 13. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007).[6] Like Debtor here, Marrama argued that the Code gave him an absolute right to convert. The Supreme Court noted, however, that a case may only be converted to another chapter if "the debtor

---

[6] § 706(a) provides in relevant part that a "debtor may convert a case under [chapter 7] to a case under chapter 11, 12, or 13 . . . at any time, if the case has not been" previously converted from chapter 11 or 13.

-5-
Case 17-12274-t11    Doc 1079    Filed 06/18/20    Entered 06/18/20 16:42:18 Page 5 of 13

may be a debtor under such chapter." *Id.* at 372. Relying primarily on § 1307(c), which provides that a chapter 13 proceeding may be dismissed or converted to a chapter 7 proceeding "for cause," the Supreme Court recognized and approved of bankruptcy courts' "routine[]" treatment of pre-petition bad-faith conduct as "cause" under § 1307(c):

> In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of honest but unfortunate debtors that the bankruptcy laws were enacted to protect. The text of §706(d) therefore provides adequate authority for the denial of [a] motion to convert.

*Id.* at 373-74 (alterations and citations omitted). Thus, *Marrama* recognized a bad faith exception to a debtor's right to convert a chapter 7 case, belying the assertion that the right is absolute.

Section 706(a) is analogous to § 1112(a), and the *Marrama* rationale has been applied to motions to convert from chapter 11 to chapter 7. In *In re Johnson*, 546 B.R. 83 (Bankr. S.D. Ohio 2016), for example, the bankruptcy court held:

> Just as the debtor's right to convert in *Marrama* was limited by § 706(d), under the reasoning of *Marrama,* the Debtor's right to convert is limited by § 1112(f), which provides that a Chapter 11 case "may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 1112(f). As things stand, because the Debtor has exhibited bad faith, his case would be subject to dismissal under § 707(a) if it were converted to Chapter 7, meaning that he may not be a Chapter 7 debtor under the reasoning set forth in *Marrama.*

546 B.R. at 170; *see also Results Systems Corp. v. MQVP, Inc.* 395 B.R. 1, 6 (E.D. Mich. 2008) (bad faith may be a factor in ruling on a § 1112(a) motion to convert); *In re Modern Metal Prods.*, 422 B.R. at 124 (citing *Marrama* in the context of a motion to convert from chapter 11 to chapter 7); *In re Quinn*, 490 B.R. 607, 614-16 (Bankr. D.N.M. 2012) (a bad faith filing may constitute "cause" to dismiss a chapter 7 case)); *In re Griffieth*, 209 B.R. 823, 827 (Bankr. N.D.N.Y. 1996) (collecting cases holding that the absence of a debtor's good faith is cause for dismissal under §

707(a)); *see generally In re Spencer*, 137 B.R. 506, 511 (Bankr. N.D. Okla. 1992) ("All courts possess inherent power to protect their jurisdiction and process from abuse"; "[i]t follows that any action taken before [the bankruptcy court], under 11 U.S.C. or any other statute, is always subject to review for bad faith, as an abuse of the court's jurisdiction or process, for gross inequity[,] . . . or on similar ground."). The Court holds that there is a bad faith exception to a debtor's § 1112(a) right of conversion: if a debtor's pre-conversion conduct makes him a "bad faith" debtor, and therefore ineligible for chapter 7 relief, then his motion to convert from chapter 11 to chapter 7 should be denied.

        b.      <u>The Confirmed Creditor Plan Exception</u>. Even before *Marrama*, some courts facing the issue held that chapter 11 debtors had no absolute right to convert to chapter 7 after a creditor plan has been confirmed. In most of these cases, the rationale was that the debtor was no longer a debtor in possession, so the § 1112(a)(1) exception ("the debtor is not a debtor in possession") applied. *See, e.g., In re Pero Bros. Farms, Inc.*, 91 B.R. 1000, 1001 (Bankr. S.D. Fla. 1988) (debtor had no right to convert its chapter 11 case to chapter 7 because the plan vested the estate assets in a liquidator, meaning that debtor was no longer a debtor in possession); *In re T.S.P. Indus, Inc.*, 120 B.R. 197, 109 (Bankr. N.D. Ill. 1990) (same); *In re Marill Alarm Systems, Inc.*, 100 B.R. 606, 607 (Bankr. S.D. Fla. 1989) (same); *In re Grinstead*, 75 B.R. 2, 3 (Bankr. D. Minn. 1985) (to the same effect).

Two cases go further. In *In re West Pointe Ltd. P'ship*, 270 B.R. 481 (Bankr. E.D. Mo. 2001), the court held that a post-confirmation debtor with a confirmed creditor plan of liquidation must get court approval before converting to chapter 7 even though it was still a debtor in possession, holding that "under Section 1112(a), the ability of a post-confirmation debtor to convert to Chapter 7 is not an absolute right, and must be prosecuted by means of a motion on

notice to all creditors and parties in interest." *Id.* at 484. The *Pero Bros.* case supports this broader view:

> Even if the foregoing considerations were not present [i.e. that the debtor was no longer a debtor in possession], I am persuaded that this court, under the discretion granted in § 105(a), should deny conversion (or dismissal) by the debtor in possession as long as a non-debtor chapter 11 plan remains under the court's consideration.
> Any other analysis would give a debtor in possession the power to veto or negate any plan it disapproves and, thereby, deprive creditors of *their* statutory right under § 1121(c) to file a plan and have that plan confirmed by the court. Such an absurd imbalance is nowhere suggested in the legislative history and could not have been contemplated by Congress.

91 B.R. at 1001 (emphasis retained).

The Court agrees with *West Pointe* and *Pero Bros.* and holds that a chapter 11 debtor loses the "absolute" right to convert once a creditor plan has been confirmed, even if he remains a debtor in possession. Any other rule would severely undermine the potent creditor threat of a competing plan and tilt the playing field unfairly in the debtor's favor. Whether the rule is viewed as a corollary of the "bad faith" exception or as a second exception needed to reconcile §§ 1112(a) and 1121(c),[7] confirmation of a creditor plan divests a debtor of any "absolute" right of conversion.

B. <u>The Motion to Convert Should be Denied Under Both Exceptions</u>.

Debtor's stated reason for conversion to chapter 7 is his wish to retain Ms. Sirignano as his criminal defense counsel. He asserts he has a fundamental right to counsel of his choice that trumps all bankruptcy considerations—including the best interests of the estate and creditors. That is incorrect. The protection of Debtor's Sixth Amendment right to counsel is the purview of the district court presiding over Debtor's criminal case, not this Court. *See, e.g., In re Duque*, 48 B.R. 965, 975 (S.D. Fla. 1984) ("[P]otential violations of the debtor's constitutional rights posed by

---

[7] The section gives creditors the right to file plans of reorganization in certain circumstances.

criminal investigations or prosecutions occurring after the filing are of concern to the criminal forum, not the bankruptcy court."); *Wootton v. Ravkind* (*In re Dixon*), 143 B.R. 671, 679 (Bankr. N.D. Tex. 1992) (any alleged deprivation of a defendant's Sixth Amendment right must be remedied in the district court, not the bankruptcy court); *In re Rheuban*, 121 B.R. 368, 384 (Bankr. C.D. Cal. 1990) (the Sixth Amendment only guarantees defendants in criminal cases the right to adequate representation, not representation by a particular attorney whom the defendant cannot afford). This Court's job is to enforce the Bankruptcy Code and Rules. If the result of that enforcement implicates Debtor's Sixth Amendment rights, the Court is confident that the presiding district court judge in *United States v. Kearney* will see to it that such rights are protected and preserved. The Court addressed this issue in its order denying Debtor's application to retain Ms. Sirignano.

In any event, Ms. Sirignano *does* represent Debtor. On January 7, 2020, Ms. Sirignano entered an appearance on Debtor's behalf in the criminal case. Since then she has filed four motions: on February 3, 2020, March 4, 2020, March 18, 2020, and May 19, 2020. According to the docket, Ms. Sirignano is still Debtor's counsel. There is nothing in the record indicating that the case must be converted to ensure that Ms. Sirignano represents Debtor. On the contrary, the only evidence before the Court is that Ms. Sirignano's representation of Debtor does not depend on conversion.

The Court concludes that Debtor's professed reason for conversion is a pretext. Debtor's real reason, the Court finds, is that he wants to "cancel" the confirmed UCC Plan. Debtor's strong dislike of the UCC plan is well documented. In its opinion confirming the UCC Plan, the Court observed:

> Debtor reacted to the UCC plan with outrage and threats. Debtor argued that the UCC, the Abruzzos, ARCO, and others were engaged in an illegal scheme to violate

state trust law and deprive him of his rights under the . . . Trusts. He accused many people of breaching their fiduciary duties to him by pursuing the UCC Plan. He sued the Abruzzos for breach of duty. Debtor's response showed his mistaken belief that only he should be allowed to control the reorganization process, whatever the cost, delay, or acceptability of payment proposals.

Before confirmation, Debtor took elaborate steps to defeat the UCC Plan—including trying to buy claims of the UCC members, removing the state court action to district court, appealing Judge Malott's ruling in the state court action, and suing the Abruzzos and others in Nevada. Upon confirmation, Debtor appealed the Confirmation Order first to the BAP and now to the Tenth Circuit. Allowing Debtor to convert to chapter 7 would negate the UCC Plan and undermine creditors' chance to ever be paid anything.[8] It would be a terrible and unjust result for creditors.

In sum, the Court concludes that Debtor's motion to convert is brought in bad faith. Furthermore, the UCC has argued forcefully that throughout this case Debtor has acted solely in his own interest and ignored the interests of creditors. There is substantial evidence to support this view and precious little evidence to the contrary. The motion to convert is another example of Debtor ignoring his fiduciary duties to creditors. *See, e.g., In re Bellevue Place Assocs.*, 171 B.R. 615, 623-24 (N.D. Ill. 1994) (chief among a debtor in possession's duties is to act as a fiduciary to all creditors); *In re Marvel Entertainment Group*, 140 F.3d 463, 471 (3d Cir. 1998) ("The debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner [that] could damage the estate, or hinder a successful reorganization.") (citation omitted).

---

[8] As the chapter 7 trustee would have the right to prosecute or settle any estate claims against the Abruzzos and ARCO, those claims might be settled for valuable consideration. However, as the Abruzzos have repeatedly said in this case, the reason they are paying $3,000,000 to the estate is because the proposed transaction would rid them of Debtor forever (because the Trusts would no longer hold ARCO stock and they would resign as trustees). A chapter 7 trustee could not deliver this result.

Debtor's bad faith throughout this case, and now in seeking conversion, removes him from the class of individuals permitted to be chapter 7 debtors. As in *Marrama*, here "the facts establish[] a 'bad faith' case." 549 U.S. at 370. Debtor's motion therefore should be denied. The Court also concludes that Debtor lost the "absolute" right of conversion when the UCC Plan was confirmed. The case should not be converted at this late date.

C.      <u>If the Court Were Required to Convert the Case, it Would Be Immediately Reconverted</u>.

*Marrama* cited cases where the procedural tactic of immediate reconversion was used to prevent a debtor's unjust or ill-advised exercise of his "absolute right" to convert. *Marrama*, 549 U.S. at 368, n.2.; *see also In re Broad Creek Edgewater, L.P.,* 371 B.R. 752, 758 (Bankr. D.S.C. 2007) (court denied the motion to convert from chapter 11 to chapter 7 because there were grounds for immediate reconversion). The UCC has requested immediate reconversion as an alternative to denying the motion to convert.

Under § 706(b), a court has discretion to convert a chapter 7 case to chapter 11 "based on what will most inure to the benefit of all parties in interest." *In re Schlehuber*, 489 B.R. 570, 573 (8th Cir. BAP 2013) (citation omitted). A debtor's preference is not paramount in this consideration. *Id.* at 575-76. Rather, the debtor's ability to pay his debts under a chapter 11 plan is a "central consideration," *id.* at 574, and should be considered among other relevant factors, such as the beneficial effect of conversion on interested parties, the likelihood of confirmation of a chapter 11 plan, and furtherance of the purpose of the Bankruptcy Code. *Decker v. United States Trustee*, 548 B.R. 813, 817 (D. Alaska 2015).

If the Court was required to grant Debtor's motion on the asserted "absolute right" grounds, there would be more than sufficient grounds for immediate reconversion. The confirmed UCC plan is creditors' best hope of getting paid anything. It seems very unlikely that a chapter 7 trustee

Case 17-12274-t11    Doc 1079    Filed 06/18/20    Entered 06/18/20 16:42:18 Page 11 of 13

could negotiate as good a deal with the Abruzzos and ARCO as the one obtained by the UCC because a trustee would not be able to deliver all of the releases set out in the UCC Plan. Administrative expenses and trustee fees also would dilute any dividend to creditors. Creditors likely would be forced to rely on the questionable value of Debtors' claims against the Abruzzos and ARCO. For this and other reasons, it is in the best interests of all interested parties (even Debtor!)[9] for the confirmed UCC plan to be consummated. If the Court had no choice but to grant Debtor's motion to convert, it would immediately grant the UCC's motion to reconvert to avoid irreparable harm to creditors and the estate.

D. Debtor's Involuntary Servitude Argument Fails.

Finally, Debtor argues that forcing him to stay in chapter 11 would violate the Thirteenth Amendment's prohibition against involuntary servitude. As a general matter, the theory is colorable. *See, e.g., In re Snyder*, 509 B.R. 945, 955 (Bankr. D.N.M. 2014) ("there are potential constitutional problems with compelling an individual chapter 7 debtor to convert to chapter 11"); *Toilbb v. Radloff,* 501 U.S. 157, 165-166 (1991) (Congress' primary concern about a debtor being forced into a Chapter 13 case was to avoid compelling debtors" to toil for the benefit of creditors in violation of the Thirteenth Amendment"); *In re Graham*, 21 B.R. 235, 238 (Bankr. N.D. Iowa 1982) (citing legislative history that a mandatory chapter 13 plan would constitute involuntary servitude.).

---

[9] Although Debtor does not appreciate it, the confirmed UCC Plan is a great outcome for him. It settles all disputes with the Abruzzos and ARCO; preserves most of the corpus of the Trusts, discharges his debts, and lets him get on with his life with substantial annual income. His preferred alternative of renewed litigation with the Abruzzos and ARCO would almost certainly end badly for him, given all the facts of the matter. His first attempt in suing the Abruzzos cost him dearly. He is not a sympathetic plaintiff. The Trusts have paid him $16,000,000. The notion that if only he were able to start over and sue the Abruzzos again, he would hit the jackpot, is almost certainly wrong.

-12-
Case 17-12274-t11    Doc 1079    Filed 06/18/20    Entered 06/18/20 16:42:18 Page 12 of 13

The concern about involuntary servitude does not apply here, however. Debtor does not have a job. As far as the Court can tell, Debtor has not worked in many years. His sole source of income is from the Trusts. Furthermore, the UCC Plan does not require Debtor to get a job. Instead, creditors will be paid from a fund generated by settling estate claims against the Trusts, ARCO, and the Abruzzos. Debtor will be able to continue his life of leisure, with millions of dollars of debt discharged.

### III. CONCLUSION

Debtor's motion to convert is his latest ploy to thwart his creditors, avoid paying his debts, retain all Trust payments, and attempt to restart litigation against the Abruzzos and ARCO. Like many of Debtor's actions in this case, the ploy smacks of bad faith. Debtor's right to convert to chapter 7 is subject to the bad faith exception and the "confirmed creditor plan" exception. Both apply here. Debtor's conduct in this case makes him ineligible to be a chapter 7 debtor, so the motion to convert should be denied. In addition, conversion is not in the best interest of the creditors, who stand to benefit substantially by consummation of the confirmed UCC Plan. Debtor's motion to convert will be denied by a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 18, 2020

Copies to: counsel of record

-13-
Case 17-12274-t11    Doc 1079    Filed 06/18/20    Entered 06/18/20 16:42:18 Page 13 of 13