UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

VICTOR P. KEARNEY,                                  No. 17-12274 t11

    Debtor.

## OPINION

Before the Court is Debtor's motion for an order instructing the New Mexico Court of Appeals ("NMCOA") that the automatic stay does not prevent it from resolving three pending appeals. The appeals arise from a decision made by the state district court (Hon. Alan Malott) that allowed certain modifications to two spendthrift trusts. Debtor is the lifetime income beneficiary of the trusts. The trust modifications are a crucial part of the Unsecured Creditors Committee's ("UCC's") competing plan of reorganization. This Court modified the automatic stay to allow Judge Malott to decide whether the trust modifications could be made. The stay relief order is silent about appeals. In his motion, Debtor advances four reasons why the Court should enter a supplemental order that grants stay relief for the appeals. None of the reasons has merit. Debtor made a better argument at the final hearing on the motion, i.e., that the stay relief order included appeals, so no additional relief is needed. The Court agrees; no other interpretation of the stay order makes sense. The motion therefore will be granted.

A.    <u>Facts</u>.

The facts of this case are well known to the Court and the parties and are recited herein only to the extent necessary to provide context for the Court's discussion.

The will of Debtor's deceased wife, Mary Pat Abruzzo Kearney, bequeathed 18.5% of the stock of Alvarado Realty Company ("ARCO") to two spendthrift trusts (together, the "Trusts").

During his lifetime, Debtor is the income beneficiary of the Trusts. Upon his death, the corpus of the Trusts is to be distributed to Mary Pat's brothers or their children. Mary Pat's will designated her brothers, Louis and Benjamin Abruzzo (the "Abruzzos"), and Debtor as co-trustees of the Trusts.[1]

The Abruzzos and Debtor have an extremely contentious and hostile relationship. The nearly four years of prepetition litigation[2] between them over the Trusts is well documented in this Court's prior opinions and, more recently, in the Tenth Circuit's opinion, *Kearney v. Unsecured Creditors Committee*, 987 F.3d 1284 (10th Cir. 2021). That litigation was stayed when Debtor filed this chapter 11 bankruptcy case on September 1, 2017.

Debtor proposed seven plans of reorganization, none of which ever made it to a final confirmation hearing. The UCC filed a competing plan on July 12, 2018, and an amended plan on August 13, 2018 (the "Amended UCC Plan"). The Amended UCC Plan required state court approval of the following changes to the Trusts:

1. ARCO would pay $12,571,799.00 to the Trusts in exchange for all ARCO stock held by the Trusts;

2. The Trusts would pay $3,000,000.00 to Mr. Kearney, who in turn would deliver the funds to a Creditor Trustee (as defined in the plan); and

3. The Allowed Priority Tax Claim of the IRS would be paid over five years from the Petition Date, in February and August of each year, from the net income that would otherwise be distributable to Mr. Kearney from the Trusts.

These changes have been referred to as the "Three Actions." The Amended UCC Plan also contained the following provisions:

I.     RULES OF INTERPRETATION; DEFINED TERMS; COMPUTATION OF TIME; AND GOVERNING LAW
. . .
       b.     Defined Terms

---

[1] Debtor resigned as a trustee on December 6, 2016.
[2] Judge Malott presided over the entire course of prepetition litigation.

. . .
   "Final Order" means an order of the Bankruptcy Court or the State Court, that has not been stayed by order of a court of competent jurisdiction and does not remain subject to further appeal.
. . .
VII. CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN, EFFECT OF CONFIRMATION OF PLAN, EFFECTIVE DATE
   A.  Conditions Precedent to Effective Date
   The Effective Date shall not occur until the following conditions have been satisfied or waived: (i) the Confirmation Order shall have been entered and shall be a Final Order; (ii) an order approving as proper actions of the MPK Trustees . . . [the Three Actions] . . . shall be a Final Order . . . .

On August 30, 2018, the Abruzzos filed a motion for relief from the automatic stay so they could ask Judge Malott for a hearing date on the Three Actions. Over Debtor's objection, the Court granted the relief. Judge Malott gave the Abruzzos a hearing on September 27, 2018. They then filed a supplemental stay relief motion, asking that they be able to attend the September 27, 2018, hearing and argue in favor of the Three Actions. Debtor objected. By an order dated September 18, 2018, the Court granted the supplemental motion (the "Stay Relief Order"), stating in part:

IT IS HEREBY ORDERED that the automatic stay imposed under 11 U.S.C. § 362(a) is hereby modified, effective immediately, to allow the Trustees to proceed in the State Court Action (as defined in the memorandum opinion) to determine whether the [Three Actions] would be proper actions of the Trustees . . . .

Debtor appealed the Stay Relief Order and asked this Court and the District Court for a stay pending appeal. The requests were denied.[3]

On October 18, 2018, Judge Malott entered an order approving the Three Actions (the "Three Actions Order"). On October 31, 2018, Debtor appealed the Three Actions Order to the NMCOA.[4] On January 15, 2019, he filed a motion requesting that the NMCOA stay the Three

---

[3] Debtor eventually withdrew the appeal.
[4] The appeal was docketed as Case No. A-1-CA-37793.

Actions Order pending the outcome of the appeal. On January 30, 2019, the NMCOA denied the motion.

Based on the Three Actions Order, on November 7, 2018, the UCC filed a Second Amended Plan of Reorganization (the "Confirmed UCC Plan"), which contained the following provisions:

> I.    RULES OF INTERPRETATION; DEFINED TERMS; COMPUTATION OF TIME; AND GOVERNING LAW
> . . .
>        b.    Defined Terms
> . . .
> "Asset" or "Assets" means all assets of the Debtor of any nature whatsoever, including, without limitation, all . . . Causes of Action. . . .
> . . .
> "Causes of Action" means any and all rights, claims, demands, and causes and rights of action of the Debtor . . . including but not limited to . . . the State Court Litigation . . . .
> . . .
> "Creditor Trust" means the trust established by this Plan for the benefit of the creditors that will be administered by the Creditor Trustee and in which Creditor Trust Assets will be held until distributed.
>
> "Creditor Trust Assets" means the Trust Payment and the Assets.
> . . .
> "Effective Date" means the date ten (10) business days after all of the following conditions have been satisfied: (i) the Confirmation Order shall have been entered and shall be a Final Order; (ii) all documents, action, and agreements necessary to implement the Plan have been executed; (iii) closing on the ARCO Stock Redemption shall have occurred; and (iv) receipt by the Creditor Trustee of the Trust Payment.
> "State Court Litigation" means the state court case filed by Debtor in the Second Judicial District, County of Bernalillo, New Mexico, Case No. D-202-CV-2013-07676, related to the testamentary trusts created by Mary Pat Kearney upon her death pursuant to her Last Will and Testament, against defendants Louis Abruzzo and Benjamin Abruzzo as Trustee.
> . . .
> VI. MEANS FOR IMPLEMentation
>        A.    Plan Duration and Implementation of the Plan
> . . .
>        Implementation
>                1.    Establishment of Creditor Trust. On the Confirmation Date, the Creditor Trust shall be established . . . ."

. . .

         3. Approval of ARCO Stock Redemption, Trust Payment, and IRS Payment. Pursuant to the Court's "Findings of Fact and Conclusions of Law and Order Related Thereto" entered in the State Court Litigation on October 31, 2018, Louis and Benny Abruzzo, in their roles as Trustees of the MPK Trust have obtained approval of the ARCO Stock Redemption, the Trust Payment, and the IRS Payment, the appointment of Successor Trustee of the Trust, and the modification of the Trust in the State Court Litigation, and no further State Court approval is required.

. . .

         6. Release of Abruzzo/ARCO Parties. Upon receipt of the Trust Payment by the Creditor Trust, the Abruzzo/ARCO Parties are hereby released and forever discharged from all Causes of Action, as defined above, with Debtor fully, finally, and forever waiving relinquishing, releasing and discharging all such Causes of Action.

. . .

    I.     Rights to Pursue Causes of Action

         The State Court Litigation and Causes of Action against any of the Abruzzo/ARCO Parties will be released upon the Effective Date of this Plan. . . .

. . .

VII. CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN; EFFECT OF CONFIRMATION OF PLAN, EFFECTIVE DATE

A.    Conditions Precedent to Effective Date

         The Effective Date shall not occur until the following conditions have been satisfied or waived: (i) the Confirmation Order shall have been entered and shall be a Final Order; (ii) all documents, actions, and agreements necessary to implement the Plan have been executed; (iii) closing on the ARCO Stock Redemption shall have occurred; and (iv) receipt by the Creditor Trustee of the Trust Payment.

         The "Findings of Fact and Conclusions of Law and Order Related Thereto" entered in the State Court Litigation on October 31, 2018 constitutes an order approving as proper actions of the MPK Trustees the ARCO Stock Redemption, the Trust Payment, and the IRS Payment, and therefore such approval is no longer a condition precedent to confirmation of this Plan or to the Effective Date.

The Court confirmed the Confirmed UCC Plan by an order entered February 28, 2019.

Debtor appealed the confirmation order to the Tenth Circuit BAP, and then to the Tenth Circuit Court of Appeals. Both courts affirmed the confirmation order. Debtor's counsel has stated that Debtor intends to file a petition for a writ of certiorari in the United States Supreme Court. His deadline to do so is September 3, 2021.

The only requirement for the Confirmed UCC Plan to become effective is that the confirmation order be a "final order."[5] If Debtor's petition for certiorari is denied, the confirmation order will be a final order and the plan will be "effective."

On September 19, 2019, Debtor filed a motion in state district court for reconsideration of the Three Actions Order. Judge Malott denied the motion on jurisdictional grounds (based on the pending appeal). Debtor appealed the denial on February 24, 2020.[6] On March 12, 2020, the NMCOA ruled that the district court had jurisdiction over the reconsideration motion. It appears that this appeal is moot.

On March 19, 2020, Debtor resubmitted his motion to reconsider the Three Actions Order. After a hearing, on December 31, 2020, Judge Malott denied the motion on its merits (the "Reconsideration Order"). Debtor appealed the Reconsideration Order on January 12, 2021.[7]

The appeals arising from the Three Actions Order and the Reconsideration Order are designated by the NMCOA as "related" but have not been consolidated. Each is pending.

The appeal of the Three Actions Order is fully briefed and ready for disposition by the NMCOA. It was submitted to a three-judge panel on February 1, 2021. Briefing on the Reconsideration Order appeals has not yet started. It is unclear whether the NMCOA would rule on the first appeal before the parties brief the later appeals.

On March 4, 2021, the NMCOA entered an order staying the three appeals, stating:

The Court has reviewed the record and the order entered by the Bankruptcy Court modifying the automatic stay in Plaintiff's bankruptcy action. The order states, in pertinent part, that the automatic stay imposed under 11 U.S.C. § 362(a) is modified to allow the Abruzzo Trustees to seek a hearing in the district court case on [the

---

[5] Unlike the Amended UCC Plan, the Confirmed UCC Plan does not require that the Three Actions Order be a "final order." On the contrary, it provides that "no further State Court approval" of the Three Actions is required for the plan to become effective.

[6] The appeal was docketed as A-1-CA-38847

[7] This appeal was docketed as A-1-CA-39504.

Three Actions]. The order did not expressly include a modification of the automatic stay to apply to appeals or any proceedings in the New Mexico Court of Appeals or the New Mexico Supreme Court. As such, until and unless this Court is supplied with either an express order from the Bankruptcy Court modifying the automatic stay for this Court to address any and all appeals from the underlying case pertaining to [the Three Actions], or an order of discharge of Plaintiff's bankruptcy, this appeal shall be stayed.

B.    Debtor's Arguments for a Supplemental Order Granting Stay Relief for the Appeals.

In his motion for instructions Debtor argues:

For the following reasons, this Court should issue an order clarifying that the appeal may proceed and that, to the extent necessary, the automatic stay is lifted so the New Mexico appellate courts may review the state court approval of the Three Actions: (a) the automatic stay does not apply to the appeal; (b) the plan of reorganization contemplates resolving the appeal; (c) the appeal is not moot because the Court of Appeals of New Mexico can rule before the confirmation order is final; and (d) this Court has power to grant this relief in [sic] to implement the confirmation order.

These arguments will be addressed in turn.

1.    First Argument: The Automatic Stay Does Not Apply to the Appeal. In relevant part, § 362(a) provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of--

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

Debtor argues that the automatic stay does not apply to the state court appeals because the Three Actions Order was entered in a case *he* initiated. *See, e.g., Brown v. Armstrong*, 949 F.2d 1007, 1009-10 (8th Cir. 1991) ("[A]s the plain language of [§ 362(a)(1)] suggests . . . the Code's automatic stay does not apply to judicial proceedings . . . that were initiated by the debtor"). It is true that Debtor was the original plaintiff when he filed the state court lawsuit in 2013. *See Kearney*, 987 F.3d at 1287-88 (discussing the lawsuit). However, the Abruzzos filed counterclaims

in the state court action. In 2015, Judge Malott directed a verdict in favor of the Abruzzos on Debtor's claims. That left only the Abruzzos' counterclaims against Debtor unresolved. When Debtor filed for bankruptcy in 2017, the automatic stay unquestionably stayed those counterclaims. *See, e.g.*, *In re Merrick*, 175 B.R. 333, 337 (9th Cir. BAP 1994) ("a counterclaim is an action or proceeding against the debtor [under] § 362(a)(1)"). Until now, Debtor has never suggested that the automatic stay did not apply to the state court action. Indeed, when the Abruzzos initially sought to lift the automatic stay so they could litigate their counterclaims, Debtor successfully opposed the motion. Likewise, when the Abruzzos asked for stay relief so they could go before Judge Malott to seek approval of the Three Actions, Debtor vigorously opposed lifting the stay. As noted above, Debtor even appealed the Court's Stay Relief Order, arguing that cause did not exist to lift the stay. It is absurd, perhaps even bad faith, for Debtor to argue now that the stay does not apply to the state court action. Indeed, he may be precluded from making this argument under the doctrine of judicial estoppel. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position[.]"); *Ordonez v. Canyons Sch. Dist.*, 788 Fed. App'x 613, 616 (10th Cir. 2019) (unpublished) (quoting *Maine*). Here, it is unacceptable for Debtor to argue for more than three years that the automatic stay applies to the state court action, yet now assert that the automatic stay does not apply.

        2.    <u>Second Argument: The Plan of Reorganization Contemplates Resolving the Appeals</u>. Debtor also argues that the Court must allow the NMCOA to review the Three Actions Order because the Confirmed UCC Plan "contemplates resolving the appeal." This argument has no merit. By the plain terms of the Confirmed UCC Plan, quoted above, resolution of the appeals

is not required. In fact, on the Effective Date Debtor's claims in the state court action are simultaneously released and transferred to the Creditor Trust. One of the first things the Creditor Trustee must do is dismiss the state court appeals. Thus, not only does the Confirmed UCC Plan not require resolution of the appeals, it *prohibits* their resolution.

In support of his argument to the contrary, Debtor cites *C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967), which held:

> [W]hen the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should a fortiori not be controlling. This is but an application of the rule of *Erie* ... where state law as announced by the highest court of the State is to be followed. This is not a diversity case but the same principle may be applied for the same reasons, viz., the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State.

*Bosch's Estate* has no bearing on this case. It addressed a situation where the IRS was alleged to be bound by a state court adjudication to which it was not a party. 387 U.S. at 463. Here, in contrast, Debtor is a party to the state court action and has participated in it from the beginning. Furthermore, in *Bosch's Estate* the state court adjudication directly affected an important federal statute (the federal tax laws) and federal agency (the IRS). *Id.* at 463-65. Here, the Three Actions Order has no effect on any federal law or agency.[8]

Debtor also cites *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002), in support of his argument that the NMCOA must rule on the pending appeals. Like *Bosch's Estate*, *Riddle* is easily distinguishable. *Riddle* stands for the unsurprising proposition that when a federal court needs to interpret state law, it "must look to the rulings of the highest state court, and, if no such rulings

---

[8] Debtor also cited to *In re Trust D Created Under Last Will and Testament of Darby*, 234 P.2d 793 (Kan. 2010). *Trust D* followed *Bosch's Estate*; the Kansas Supreme Court agreed to rule on a state law issue that directly affected the IRS's efforts to collect taxes. 234 P.3d at 796.

exist, must endeavor to predict how that high court would rule." 305 F.3d at 1118. This case does not require the Court to interpret New Mexico law. The Court was required to consider potential reversal of the Three Actions Order only in the context of whether to confirm the (now) Confirmed UCC Plan. *See In re Kearney*, 2019 WL 994567, at *12-13 (Bankr. D.N.M).

Neither *Bosch's Estate* nor *Riddle* stand for the proposition that a confirmed bankruptcy plan must provide for the exhaustion of all state court appeals before it can become effective. On the contrary, the Bankruptcy Code allows, as here, a chapter 11 plan to settle disputed claims held by the estate. *See* § 1123(b)(3)(A) (plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate").

3. <u>Third Argument: The Appeal is not Moot Because the Court of Appeals of New Mexico Can Rule Before the Confirmation Order is Final</u>. Debtor is correct that the NMCOA theoretically could rule on the first appeal before the Supreme Court disposes of a petition for a writ of certiorari. That seems unlikely, however. For one thing, the appeals are related and the NMCOA has a policy of considering related appeals together. *See, e.g., City of Sunland Park v. Paseo Del Norte Ltd. P'ship*, 990 P.2d 1286, 1290 (Ct. App. 1999) ("New Mexico appellate courts disfavor piecemeal appeals."). Thus, it seems probable that the parties would have to fully brief the later appeals before a ruling from the NMCOA on the first appeal can be expected. Second, a likely denial of the petition for writ of certiorari is less than three months away. It is doubtful the NMCOA could rule that quickly even if it decided to rule on the first appeal separately.

In any event, the fact that granting requested relief would not be futile does not mean the relief should be granted. Rather, it only means that the request should not be denied out of hand. As set forth above, Debtor's substantive arguments in favor of relief lack merit.

4.      Fourth Argument: This Court Has Power to Grant This Relief in [sic] to Implement the Confirmation Order. Neither the Abruzzos nor the UCC takes issue with the assertion that the Court has the authority to grant the requested relief. Like the mootness issue, however, the fact that the Court has authority does not mean it should exercise it. There must be, in addition, merit in the requested relief. Merit is lacking in Debtor's written arguments.

C.      The Stay Relief Order Included Appeals.

While Debtor's arguments in his motion miss the mark, his counsel also argued at the final hearing that the Stay Relief Order must have been intended to, and did, include appeals when it was entered. The Court agrees. When the Court modified the automatic stay to allow Judge Malott to rule on the Three Actions, it did not intend to deny any party the right to appeal an adverse ruling. In fact, the Court elsewhere implied that Debtor had the right to appeal the Three Actions Order. *See In re Kearney*, 2018 WL 4726002, at *6 (Bankr. D.N.M.) ("Debtor would not be irreparably injured if no stay pending appeal is granted. No one knows when, how, or even if Judge Malott will rule. . . . Whatever he decides, his rulings would be subject to appeal."); *In re Kearney*, 2019 WL 994567, at *12 ("Judge Malott's ruling [on the Three Actions] likely will be affirmed on appeal."). Likewise, in denying Debtor's motion for a stay pending his appeal of the Stay Relief Order, the District Court assumed that the relief granted included the right to appeal. *See Kearney v. Abruzzo*, 2018 WL 5112909, at *6 (D.N.M.) (Debtor could "appeal any adverse [s]tate [c]ourt ruling" on the Three Actions).

Furthermore, the Amended UCC Plan, *which was the plan pending when the Abruzzos sought stay relief*, required as a condition to effectiveness that Judge Malott's order on the Three Actions be a final order. If the automatic stay had not been not modified to allow appeals, the order could never become a final order. Because of that, the Stay Relief

Order necessarily included appeals within the relief granted.

Although there is little authority on this point, it appears that relief from the automatic stay to proceed with state court litigation typically encompasses appeals. *See, e.g., In re Ebel,* 139 F. App'x 26, 28-29 (10th Cir. 2005) (implying that relief from automatic stay to allow court to divide marital property included appeal to state appellate court); *In re Harris,* 268 B.R. 199, 204-05 & n.3 (Bankr. W.D. Mo. 2001) (retroactive annulment of automatic stay to include past trial court proceedings and future proceedings in state court "as is appropriate" included proceedings before appellate court). The reason for this is clear— a state court litigant who receives an adverse trial court ruling has only one avenue for relief, that is an appeal to a higher state court. *See, e.g.*, *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1139 (10th Cir. 2006) ("The *Rooker-Feldman* doctrine prohibits federal suits that amount to appeals of state-court judgments."); *In re Wilson,* 116 F.3d 87, 90 (3d Cir. 1997) (cause exists to modify the automatic stay when if otherwise a state court litigant could not appeal a prepetition judgment); *In re Metz*, 165 B.R. 769, 771 (Bankr. E.D.N.Y. 1994) (granting relief from stay to allow state appellate proceedings to continue, because the bankruptcy court could not serve as an appellate court for the state court judgment); *In re Morris*, 153 B.R. 588, 590-92 (M.D. Fla. 1993) (affirming a bankruptcy court's conclusion that cause existed to lift the automatic stay to allow a state court appeal to continue); *In re Lee*, 428 B.R. 667, 670 (Bankr. D.S.C. 2009), citing H.R. Rep. No. 95-595, at 343-44 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6299-300 (the "[l]egislative history to § 362(d)(l) . . . supports lifting the stay . . . to permit an action to proceed to completion in another tribunal").

Unless a dispute is settled, a New Mexico litigant has a right, guaranteed by the state

constitution and by state statute, to appeal the trial court's ruling. *See* N.M. Const. Art. 6 § 27 ("Appeals shall be allowed in all cases from the final judgments and decisions of the probate courts and other inferior courts as provided by law."); NMSA 1978, § 39-3-2 (governing civil appeals from the district court, and providing that "any party aggrieved [by the entry of any final judgment or decision] may appeal therefrom to the supreme court or to the court of appeals"). Although the Confirmed UCC Plan will settle the appeals when it becomes effective, Debtor has the right to appeal the Three Actions Order until then.

Conclusion

The Stay Relief Order is silent about appeals and Debtor's arguments in his motion are not persuasive. In contrast, Debtor's argument at the final hearing, i.e., that the order must have included, and did include, appeals, has merit. The Court will grant the motion by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered on Docket: July 22, 2021

Copies to: Counsel of Record

Victor Kearney
PO Box 11094
Zephyr Cove, NV 89448